**Barry Wayne WOOTTON, Appellant**

v.

**The STATE of Texas, Appellee.**

**No. 14–02–01221–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

March 11, 2004.

Jules L. Laird, Jr., Houston, for appellant.

Kelly Ann Smith, Houston, for appellee.

Panel consists of Justices EDELMAN, FROST, and GUZMAN.

**OPINION**

KEM THOMPSON FROST, Justice.

In this case, we must decide whether the evidence is legally and factually sufficient to support appellant Barry Wayne Woot-

ton's conviction for possession of anhydrous ammonia with the intent to manufacture methamphetamine under section 481.124 of the Texas Controlled Substances Act. This appears to be the first case to address the sufficiency of the evidence to support a conviction under this recently enacted statute. We hold the evidence is sufficient, overrule appellant's additional issue regarding the admission of prior convictions, and affirm the trial court's judgment.

**I. PROCEDURAL AND FACTUAL BACKGROUND**

On February 26, 2002, Officer Robert Clark of the Harris County Sheriff's Department, conducted surveillance on a hotel room off of Interstate 45 after receiving information from a confidential source that two individuals known to be methamphetamine "cooks," John Forster and Pamela Edwards, were manufacturing and selling methamphetamine in the room. Officer Clark testified that, during his surveillance, he saw appellant arrive at the hotel in a Jeep. According to Officer Clark's testimony, appellant initially removed two large, white cotton bags from the back of the Jeep and entered the hotel room that was under surveillance. Approximately thirty minutes later, Officer Clark saw appellant leave the room, go to the Jeep, and retrieve a black briefcase and a black plastic bag, which Officer Clark described as looking like a trash bag. Officer Clark then observed appellant removing additional packages from the back of a Suburban, which the officer recognized as belonging to Forster.

When Officer Clark resumed surveillance the next day, he observed two white males walk separately to the hotel room in question, stay for a minute or two, and then leave. Officer Clark gave this information to his sergeant and left the scene. Officer Richard Corrales with the Houston

Police Department Narcotics Division and his partner went to the scene and continued the surveillance. They saw appellant exit the room in question approximately four times carrying large trash bags to the Jeep, while Forster made three trips with bags to the Suburban. Forster, Edwards, and two children then left the hotel in the Suburban; appellant drove behind them in the Jeep. When both drivers failed to signal as they made right turns onto a service road, Officer Corrales advised other police units to conduct a traffic stop. Once the vehicles were stopped, a narcotics dog searched the perimeter of each vehicle and showed interest in both the Suburban and the Jeep.

The officers searched appellant's Jeep further and recovered three "tanks."[1] A test performed on one of the tanks indicated the presence of anhydrous ammonia. The search also uncovered a yellow bin. Inside the bin, officers found, among other things, a pack of paper coffee filters and a plastic container holding stripped batteries.[2] In addition, Officer Mark Smith and Officer Corrales testified that they recovered a small leather case with a syringe containing a controlled substance later identified as methamphetamine. Inside Forster's Suburban, officers discovered marijuana, methamphetamine, at least one syringe, lighter fluid, several packages of powder that appeared to be crushed Ephedrine, and used coffee filters.[3] The officers also recovered an industrial-type blower.[4]

Appellant was charged by indictment with the offense of possession of anhydrous ammonia with the intent to manufacture methamphetamine.[5] *See* Tex. Health & Safety Code Ann. § 481.124 (Vernon 2003). A jury found appellant guilty and, after finding the enhancement paragraphs true,[6] assessed punishment at twenty-five years' confinement in the Texas Department of Criminal Justice, Institutional Division.

## II. Issues Presented

Appellant raises the following issues for appellate review:

(1) Did the trial court err by allowing evidence of appellant's two prior cocaine-possession convictions for impeachment purposes during the guilt/innocence phase of trial?

---

1. Witnesses during trial used the terms "tanks," "cylinders" and "canisters" to refer to these containers. For clarity, we use the term "tanks" throughout the opinion to refer to the items.

2. During trial, there was a question as to whether the container with the batteries came from appellant's Jeep or Forster's Suburban. Officer Mark Smith, who conducted the search of appellant's Jeep with the narcotics dog, testified that he recovered the plastic container from appellant's Jeep and then walked from the Jeep to the Suburban to show Officer Corrales what he had found. When Officer Smith opened the plastic container, he was told he should not be handling the contents. At that point, Officer Smith put the container down, which happened to be in Forster's Suburban. Officer Corrales also testified to these events.

3. Officers also found white tablets and a small syringe containing a substance inside Edwards's purse and at least two syringes in Forster's pocket.

4. The testimony at trial was inconsistent as to whether the blower came from appellant's Jeep or Forster's Suburban.

5. The record in this case shows that the complaint was filed in February of 2002, and that appellant was charged by indictment in April of 2002.

6. The indictment contained two enhancement paragraphs for appellant's 1992 felony conviction for possession of a controlled substance and his 2000 felony conviction for tampering with evidence.

(2)–(3) Is the evidence legally and factually sufficient to prove appellant's knowledge of the existence and unlawful nature of the substance detected in the tested tank?

(4)–(5) Is the evidence legally and factually sufficient to prove appellant's intent to manufacture methamphetamine?

### III. ANALYSIS AND DISCUSSION

### A. Admission of Prior Convictions in Guilt/Innocence Phase of the Trial

■ In his first issue, appellant contends the trial court erred in admitting evidence of two 1992 convictions for unlawful possession of cocaine during the guilt/innocence phase of trial.[7] Although the issue was not raised by the State, this court will first address whether appellant preserved error for appellate review. *See Jones v. State*, 942 S.W.2d 1, 3 n. 1 (Tex. Crim.App.1997) ("Preservation of error is a systemic requirement that a first-level appellate court should ordinarily review on its own motion.").

The record indicates that, prior to trial, the State gave appellant notice that it intended to use appellant's prior convictions for impeachment purposes. Appellant then filed a motion for a *Theus* hearing, requesting the court to review the *Theus* factors before permitting impeachment with appellant's prior convictions. *See Theus v. State*, 845 S.W.2d 874 (Tex.Crim. App.1992). At the end of the first day of testimony, outside of the jury's presence

and prior to appellant taking the stand, the trial court conducted a hearing on the motion and ruled that appellant's convictions were admissible. Two days later, on direct examination, appellant admitted he had been convicted of felony possession of cocaine twice in 1992 and discussed the punishments he had received for those convictions.

■ As a general rule, a complaint regarding improperly admitted evidence is waived if the same evidence is introduced by the defendant himself. *See Rogers v. State*, 853 S.W.2d 29, 35 (Tex.Crim.App. 1993) (op. on reh'g). An exception to this general rule applies when the accused introduces the evidence in an effort to meet, rebut, destroy, deny, or explain evidence that already has been improperly admitted. *Id.* This exception does not apply in this case. The record indicates appellant testified about his prior convictions on direct examination in an effort to preempt questions anticipated by the State during cross-examination.[8] By testifying on direct examination as to his 1992 convictions, appellant waived any error relating to the trial court's ruling regarding admissibility of the convictions. Accordingly, we overrule appellant's first issue.

### B. Legal and Factual Sufficiency of the Evidence

In his second, third, fourth, and fifth issues, appellant contends the evidence is legally and factually insufficient to support his conviction because the State failed to

7. The trial court allowed three prior convictions into evidence, two for possession of a controlled substance from 1992 and one for tampering with evidence in 2000. Appellant claims error with regard to the 1992 convictions only.

8. After the trial court ruled that appellant's prior convictions were admissible, defense counsel stated that "in view of the Court's

ruling and as a matter of trial tactics, I intend to bring out the prior convictions on the record rather than waiting for the State to use them on cross, and I want the record to reflect that I am not waiving my objection to the admissibility of these prior convictions and I am admitting them only on direct because of the Court's ruling as a matter of trial tactics."

establish that (1) he knew the tested tank contained anhydrous ammonia, and (2) he had the intent to manufacture methamphetamine. Specifically, appellant argues that the State failed to produce evidence of appellant's knowledge and intent because (1) none of the tanks were marked; (2) appellant did not act unduly suspicious when stopped by police; (3) the State did not offer into evidence any admissions by appellant regarding his knowledge of the tanks' contents; and (4) Officer Corrales testified that he did not know how the tanks were used.

In evaluating a legal-sufficiency challenge, we view the evidence in the light most favorable to the verdict. *Wesbrook v. State,* 29 S.W.3d 103, 111 (Tex.Crim.App. 2000). The issue on appeal is not whether we, as a court, believe the State's evidence or believe that appellant's evidence outweighs the State's evidence. *Wicker v. State,* 667 S.W.2d 137, 143 (Tex.Crim.App. 1984). We may not overturn the jury verdict unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State,* 819 S.W.2d 839, 846 (Tex. Crim.App.1991). The jury, as the trier of fact, "is the sole judge of the credibility of the witnesses and of the strength of the evidence." *Fuentes v. State,* 991 S.W.2d 267, 271 (Tex.Crim.App.1999). The jury may choose to believe or disbelieve any portion of the witnesses' testimony. *Sharp v. State,* 707 S.W.2d 611, 614 (Tex. Crim.App.1986). When faced with conflicting evidence, we presume the trier of fact resolved conflicts in favor of the prevailing party. *Turro v. State,* 867 S.W.2d 43, 47 (Tex.Crim.App.1993). Therefore, if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we must affirm. *McDuff v. State,* 939 S.W.2d 607, 614 (Tex. Crim.App.1997).

In contrast, when evaluating a challenge to the factual sufficiency of the evidence, we view all the evidence without the prism of "in the light most favorable to the prosecution" and set aside the verdict only if it is "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Johnson v. State,* 23 S.W.3d 1, 6–7 (Tex.Crim.App.2000). This concept embraces both "formulations utilized in civil jurisprudence, i.e., that evidence can be factually insufficient if (1) it is so weak as to be clearly wrong and manifestly unjust, or (2) the adverse finding is against the great weight and preponderance of the available evidence." *Id.* at 11. Under this second formulation, we essentially compare the evidence which tends to prove the existence of a fact with the evidence that tends to disprove that fact. *Jones v. State,* 944 S.W.2d 642, 647 (Tex.Crim.App.1996). In conducting the factual-sufficiency review, we must employ appropriate deference so that we do not substitute our judgment for that of the fact-finder. *Id.* at 648. Our evaluation should not intrude upon the fact-finder's role as the sole judge of the weight and credibility given to any witness's testimony. *Cain v. State,* 958 S.W.2d 404, 407 (Tex.Crim.App.1997).

### Knowing Possession

Appellant first contends the evidence is legally and factually insufficient to support his conviction because the State failed to establish that appellant knew of the existence and unlawful nature of the anhydrous ammonia detected in one of the tanks recovered from appellant's Jeep. Anhydrous ammonia, a colorless liquified gas, is a key ingredient in the production of methamphetamine. Although anhydrous ammonia is not an unlawful substance per se, under section 481.124 of the Texas Health and Safety Code it is an offense to possess or transport anhydrous ammonia with the intent to unlawfully

manufacture a controlled substance. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.124(a)(1) (Vernon 2003). This section of the Texas Controlled Substances Act became effective on September 1, 2001. *See* § 481.124. Neither party has cited, nor has this court found, a case that construes this particular section of the Health and Safety Code under a legal and factual sufficiency review.

The State argues that the statute does not by its terms require knowing possession of the anhydrous ammonia.[9] *See id.* However, mere omission of an element cannot be construed to plainly dispense with one. *See* TEX. PEN.CODE ANN. § 6.02(b) (Vernon 2003) (stating that if definition of offense does not prescribe mental state, one is required unless definition plainly dispenses with any mental state element); *Aguirre v. State*, 22 S.W.3d 463, 470–77 (Tex.Crim.App.1999) (construing section 6.02(b) and setting forth factors to determine when a statute plainly dispenses with a mental state element). The State does not contend there was a manifest intent to dispense with the requirement of a mental state. Consequently, section 6.02(c) of the Texas Penal Code requires that the mental state amount at least to recklessness. *See* TEX. PEN.CODE ANN. § 6.02(c); *Aguirre*, 22 S.W.3d at 472. The indictment in this case alleged that appellant "unlawfully, with intent to unlawfully manufacture a controlled substance, namely, [m]ethamphetamine, did intentionally and knowingly possess [a]nhydrous [a]mmonia." The charge limited the jury instructions to the mental states alleged in the indictment, specifically intentionally or knowingly. *See Reed v. State*, 117 S.W.3d 260, 265 (Tex.Crim.App.2003). Though we review the legal sufficiency of the evidence against a hypothetically correct jury charge under *Malik*, the hypothetically correct jury charge is not measured simply by the elements of the offense as set out in the Penal Code without reference to the allegations in the indictment. *See Curry v. State*, 30 S.W.3d 394, 404 (Tex.Crim. App.2000). Therefore, we analyze the sufficiency of the evidence based on whether appellant intentionally or knowingly committed the offense as modified by the charging instrument. *See id.*

Section 481.124 of the Texas Health and Safety Code is part of the Texas Controlled Substances Act. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.001, 481.124. "Possession" under the Act is defined as actual care, custody, control, or management. *See* § 481.002(38). Anhydrous ammonia is not specifically listed as a controlled substance under the Act. *See* §§ 481.002(5), 481.032. However, case law construing this definition of possession in the context of knowing or intentional possession of a controlled substance is instructive. To establish the unlawful possession of a controlled substance, the State must prove that the accused (1) exercised actual care, control, or custody over the substance, and (2) was conscious of his connection with it and knew what it was. *Brown v. State*, 911 S.W.2d 744, 747 (Tex.Crim.App. 1995). Evidence that affirmatively links

---

**9.** In addition, the State claims section 481.124(b)(1) creates a presumption that an accused's anhydrous ammonia possession is knowing when he transports the substance in a "container or receptacle that is not designed and manufactured to lawfully hold or transport anhydrous ammonia." The State's characterization of the presumption is incorrect. The statute states that *the intent to unlawfully manufacture methamphetamine* is presumed if the actor possesses or transports anhydrous ammonia in a container or receptacle not designed and manufactured for anhydrous ammonia. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.124(b)(1) (emphasis added).

the accused to the contraband suffices for proof that he possessed it knowingly. *Id.* This evidence can be either direct or circumstantial. *Id.* In either case, the evidence must establish the accused's connection with the controlled substance was more than just fortuitous. *Id.* However, the evidence need not be so strong that it excludes every other outstanding reasonable hypothesis except the defendant's guilt. *Id.* at 748.

When the accused is not in the exclusive possession of the place where the substance is found, it would be improper to conclude that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances that affirmatively link the accused to it. *Guiton v. State,* 742 S.W.2d 5, 8 (Tex.Crim.App.1987). Mere presence at a place where contraband is being used or possessed does not justify a finding of joint possession. *Nunn v. State,* 640 S.W.2d 304, 305 (Tex.Crim.App.1982). Among such additional factors that can establish the affirmative link are (1) the accused's presence at the time the contraband was discovered; (2) whether the contraband was in plain view; (3) the accused's proximity to and the accessibility of the contraband; (4) whether the accused appeared to have used the contraband, e.g., whether the accused was under the influence of narcotics when arrested; (5) whether the accused possessed other contraband when arrested; (6) whether the accused made incriminating statements when arrested; (7) whether the accused attempted to flee; (8) whether the accused made furtive gestures; (9) whether there was an odor from the contraband; (10) whether other contraband or related paraphernalia was present; (11) whether the place where the contraband was found was enclosed; and (12) whether the accused owned or had the right to possess the place where the contraband was found. *Hyett v. State,* 58 S.W.3d 826, 830 (Tex. App.-Houston [14th Dist.] 2001, pet. ref'd). Though courts have recognized the foregoing possible affirmative links, there is no set formula of facts that necessitates a finding of affirmative links sufficient to support an inference of knowing possession. *Porter v. State,* 873 S.W.2d 729, 732 (Tex.App.-Dallas 1994, pet. ref'd). Affirmative links are established by the totality of the circumstances. *See Sosa v. State,* 845 S.W.2d 479, 483–84 (Tex.App.-Houston [1st Dist.] 1993, pet. ref'd) (finding totality of circumstances was of such a character that jury reasonably could have concluded defendant was aware of the contraband and exercised control over it). The number of factors present in a given case is not as important or compelling as the logical force the factors have in establishing the elements of the offense. *See Jones v. State,* 963 S.W.2d 826, 830 (Tex.App.-Texarkana 1998, pet. ref'd).

In this case, Officer Clark testified that a confidential source notified him of two methamphetamine "cooks" (Forster and Edwards), who were manufacturing and selling methamphetamine in Room 216 of a hotel in Harris County. According to Officer Clark, the foot traffic—the two males he observed separately enter the room briefly and leave—was consistent with the sale of narcotics. He saw appellant remove several large bags from the back of appellant's Jeep as well as from Forster's Suburban and take them into the room in question. Officer Clark testified that the bags appellant carried up to the room were consistent with the bags recovered from his Jeep the next day. The officers also observed appellant removing trash bags from the room and placing them inside his Jeep. When police searched appellant's Jeep, they found three tanks in large trash bags, one of which tested positive for anhydrous ammonia. Officer Clark testified

that another tank had a distinctive discoloration on the brass valves that suggested the tank was being used to store anhydrous ammonia. The Jeep was registered in appellant's name, and appellant was its sole occupant when officers stopped him and discovered the ammonia. Police also found coffee filters and stripped batteries, both of which are items used to cook methamphetamine. In addition, the officers recovered a syringe containing methamphetamine from an organizer behind the front passenger's seat of appellant's Jeep. Although the testimony was inconsistent as to whether an industrial-type blower was also discovered in appellant's Jeep, any conflict in the testimony is a conflict for the jury to resolve. *See Wyatt v. State*, 23 S.W.3d 18, 30 (Tex.Crim.App.2000). After reviewing the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.

Appellant also claims the evidence is factually insufficient to support his conviction. When evaluating a factual-sufficiency challenge, we must discuss the evidence appellant claims is most important in allegedly undermining the jury's verdict. *Sims v. State*, 99 S.W.3d 600, 603 (Tex.Crim.App.2003). Here, appellant cites the same reasons for factual insufficiency as he raised in this legal-sufficiency challenge, namely (1) the tanks were not marked; (2) appellant did not act unduly suspicious when stopped by police; (3) the State did not offer into evidence any admissions made by appellant regarding his knowledge of the tanks' contents; and (4) Officer Corrales testified that he did not know how the tanks were used. At trial, appellant claimed he thought the tanks were "LP butane, propane tanks." He also testified that the trash bags he carried into the hotel room contained clothing and personal items. Forster testified that appellant was merely staying with him at the hotel and was not aware of the contents of the tanks when Forster asked him to carry them in appellant's Jeep. Forster stated that the tanks were already in the trash bags when appellant went with him to retrieve them from the supplier and that the tanks never left the Jeep. In addition, Forster testified that the syringe and the organizer belonged to him.

The jury is the sole judge of the facts, the credibility of the witnesses, and the weight to be given the evidence. *Cain v. State*, 958 S.W.2d 404, 407 (Tex.Crim.App. 1997). Therefore, the jury may believe or disbelieve all or part of any witness's testimony. *See Jones v. State*, 984 S.W.2d 254, 258 (Tex.Crim.App.1998). A reviewing court will not sustain a factual-sufficiency challenge simply because the record contains conflicting evidence upon which the fact-finder could have reached a different conclusion. *See Santellan v. State*, 939 S.W.2d 155, 164 (Tex.Crim.App.1997). A reviewing court may disagree with the factfinder's resolution of conflicting evidence only when it is necessary to prevent manifest injustice. *See id.* at 164–65. A jury decision is not manifestly unjust merely because the jury resolved conflicting views of evidence in favor of the State. *See Cain*, 958 S.W.2d at 410.

We do not find evidence in the record that greatly outweighs the evidence supporting the trial court's judgment. Accordingly, the jury's decision was not so contrary to the weight of the evidence as to be clearly wrong and manifestly unjust.

For the reasons discussed above, we conclude the State presented legally and factually sufficient evidence to show that appellant knew of the existence and nature of the anhydrous ammonia, and we overrule appellant's second and third issues.

### Intent to Manufacture Methamphetamine

In his fourth and fifth issues, appellant contends that the State failed to establish that appellant possessed the anhydrous ammonia with the intent to manufacture methamphetamine. Under section 481.124(b), the intent to unlawfully manufacture the controlled substance methamphetamine is presumed if the actor possesses or transports anhydrous ammonia in a container or receptacle that is not designed and manufactured to lawfully hold or transport anhydrous ammonia. *See* Tex. Health & Safety Code Ann. § 481.124(b)(1). As it applies in this case, a substance is presumed to be anhydrous ammonia if the substance is in a container or receptacle that is (1) designed and manufactured to lawfully hold or transport anhydrous ammonia; or (2) not designed and manufactured to lawfully hold or transport anhydrous ammonia if a properly administered field test of the substance using a testing device or instrument designed and manufactured for that purpose produces a positive result for anhydrous ammonia. *See* Tex. Health & Safety Code Ann. § 481.124(c)(1)–(2).

In this case, three tanks were recovered from appellant's Jeep. Officer Clark testified that anhydrous ammonia tanks are typically stamped "Anhydrous Ammonia Only" as required by the Department of Transportation. None of the tanks in this case had such a label. Officer Clark also testified that two of the tanks had brass valves which had turned blue in color, indicating the presence of anhydrous ammonia. He explained that had the tanks been designed or manufactured to lawfully hold anhydrous ammonia, the valves would not be blue because there would not have been brass in contact with anhydrous ammonia. After recovering the tanks from appellant's Jeep, the officers tested one of the tanks using a tool called a "Dreger pump" with a tube manufactured to detect anhydrous ammonia. The results were positive for the presence of anhydrous ammonia. This evidence is legally sufficient to raise the statutory presumption of intent to manufacture methamphetamine.

Appellant does not attempt to show that the tanks were designed and manufactured for anhydrous ammonia. In fact, appellant admits the tanks were not labeled. At trial, appellant testified that he thought the tanks were "LP butane, propane tanks." Appellant does not dispute that one of the tanks tested positive for anhydrous ammonia nor does he contest the officer's testimony regarding the blue valves on two of the tanks. Instead, appellant contends the evidence is legally insufficient because he was not aware of the contents of the tanks and, therefore, could not have had the requisite intent to manufacture methamphetamine.

Even if appellant's evidence was sufficient to rebut a presumption of an intent to manufacture methamphetamine, the State's evidence still was sufficient to support an inference of that intent. As the trier of fact, the jury was free to disbelieve appellant's evidence. *See Williams v. State*, 692 S.W.2d 671, 676 (Tex.Crim.App. 1984). Despite testimony from appellant and Forster that appellant was not aware of the tanks' contents, officers discovered many of the ingredients used to manufacture methamphetamine in appellant's Jeep and Forster's Suburban. Officers also recovered methamphetamine from both vehicles. In addition, officers testified that they observed appellant carrying bags into and out of a hotel room under surveillance for methamphetamine-related activity. The evidence was thus legally sufficient to prove appellant's intent to manufacture methamphetamine.

Appellant also claims the evidence is factually insufficient for the same reasons he stated in his legal-sufficiency challenge. In conducting a factual-sufficiency review, "[a]ppellate courts should only exercise their fact jurisdiction to prevent a manifestly unjust result; ... courts 'are not free to reweigh the evidence and set aside a jury verdict merely because the judges feel that a different result is more reasonable.'" *Clewis v. State*, 922 S.W.2d 126, 135 (Tex.Crim.App.1996). We do not find evidence in the record that greatly outweighs the evidence supporting the trial court's judgment. For the reasons discussed above, the jury's decision was not so contrary to the weight of the evidence as to be clearly wrong and manifestly unjust.

We conclude the State presented legally and factually sufficient evidence to show that appellant possessed anhydrous ammonia with the intent to manufacture methamphetamine. Accordingly, we overrule appellant's fourth and fifth issues.

## IV. CONCLUSION

Appellant failed to preserve error on his first issue challenging the trial court's admission of two prior convictions during the guilt/innocence phase of his trial. By introducing evidence of these convictions during direct examination, appellant waived the complaint he raises in this appeal; therefore, we do not reach the merits of his first issue. We find no merit in appellant's remaining issues challenging the legal and factual sufficiency of the evidence to support his conviction. The record contains legally and factually sufficient evidence to show that appellant knowingly possessed the anhydrous ammonia with the intent to manufacture methamphetamine.

Having overruled all of appellant's issues, we affirm the trial court's judgment.