11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Darrell Pollock 

Appellant

Vs.                   No. 11-03-00161-CR -- Appeal from Throckmorton County

State
of Texas  

Appellee

 

The jury convicted appellant of possession of
anhydrous ammonia in a container that was not designed and manufactured to hold
anhydrous ammonia.  TEX. HEALTH &
SAFETY CODE ANN. '
504.001(a)(1) (Vernon 2003).  The jury
found that two enhancement allegations were true and assessed punishment at 17
years imprisonment.  The trial court
sentenced appellant in accordance with the jury=s
assessment.  Because the evidence is
legally insufficient to support the conviction, we reverse the judgment and
render a judgment of acquittal.

                                                                Background
Facts

Section 504.001 of the Health & Safety Code
provides:

(a) A person commits an offense if the person:

 

(1) possesses and maintains anhydrous ammonia in a
container or receptacle that is not designed and manufactured to hold anhydrous
ammonia.

             

The indictment alleged that, on or about March 27, 2001,
appellant possessed and maintained anhydrous ammonia in a 10-gallon metal
propane tank that was not designed and manufactured to hold anhydrous ammonia. 

                                               Issue
on Appeal and Standard of Review








In his fourth point of error, appellant argues
that the evidence is legally insufficient to establish that the tank was not
designed and manufactured to hold anhydrous ammonia.  In order to determine if the evidence is
legally sufficient, we must review all of the evidence in the light most
favorable to the verdict and determine whether any rational trier
of fact could have found the essential elements of the crime beyond a
reasonable doubt.  Jackson v. Virginia,
443 U.S. 307 (1979); Jackson v. State, 17 S.W.3d 664
(Tex.Cr.App.2000).  

                                                              The
Evidence at Trial

The State introduced the tank in question into
evidence.  Through the testimony of
Throckmorton County Sheriff John Riley, the State sought to establish that the
tank was not designed and manufactured to hold anhydrous ammonia. 

Sheriff Riley testified that the tank was stamped ALP GAS@
and that ALP@ stands for liquid propane.  He said that the tank was made for liquid
propane.  Sheriff Riley testified that
the tank was not sufficiently engineered to hold anhydrous ammonia because the
tank was stamped LP Gas.  He said that he
understood that a tank could not be used for anhydrous ammonia unless the tank
was an approved container for anhydrous ammonia.  However, Sheriff Riley said that he was not a
civil engineer or a metallurgist and that it might be necessary for a civil
engineer or a metallurgist to testify about whether a container must be
approved to hold anhydrous ammonia. 

                                                                        Analysis

The State had the burden to prove beyond a
reasonable doubt that the tank was not designed and manufactured to hold
anhydrous ammonia.  The State contends
that, because the tank was stamped ALP
GAS@ and was made for liquid propane, the
tank was not designed and manufactured to hold anhydrous ammonia.  However, the record does not contain any
evidence that a tank stamped ALP
GAS@ and made for liquid propane is not or
cannot be designed and manufactured to hold 
anhydrous ammonia.  Therefore,
there is no evidence that the tank in question was not designed and
manufactured to hold anhydrous ammonia.








Anhydrous ammonia is a hazardous substance, and
various federal regulations apply to 
storage and handling of anhydrous ammonia.  For example, an Occupational Safety and
Health Administration (OSHA) standard governs the storage and handling of
anhydrous ammonia.   See 29 C.F.R.
' 1910.111 (2003).  Also, United States Department of
Transportation regulations apply to storage and shipping of anhydrous
ammonia.  See 49 C.F.R. '' 173.301-173.315 (2003).  The American National Standards Institute has
published an American National Standard for Safety Requirements for the Storage
and Handling of Anhydrous Ammonia.  See
American Nat=l
Standards Inst. Document No. ANSI K61.1-1999.  


The Texas Legislature has classified anhydrous
ammonia as a hazardous substance. 
Section 504.001(a)(1) of the Health and Safety Code is included in a
part of the Health and Safety Code that is entitled AHazardous
Substances.@  TEX. HEALTH & SAFETY CODE ANN. tit. 6, subtit. D (Vernon 2003). 
House Bill 2205 of the 76th Legislative Session became Chapter 504 of
the Health and Safety Code.  The bill
analysis for House Bill 2205 noted that anhydrous ammonia is a key ingredient
in methamphetamine production.  House
Comm. on Agriculture & Livestock, Bill Analysis, Tex. H.B. 2205, 76th Leg.
(1999).  The bill analysis also explained
that theft of anhydrous ammonia can cause damage to farm equipment and that the
mishandling of anhydrous ammonia can cause blindness and lung damage.  Theft of anhydrous ammonia is a nationwide
problem, and other states have enacted legislation that is similar to Section
504.001.[1]

The OSHA standard establishes requirements for
anhydrous ammonia containers.  The
standard defines Acontainer@ as including Aall
vessels, tanks, cylinders, or spheres used for transportation, storage, or
application of anhydrous ammonia.@  29 C.F.R. '
1910.111(a)(2)(iv).  The OSHA standard
provides that each appurtenance to an anhydrous ammonia system must be approved
in accordance with 29 C.F.R. '
1910.111(b)(1). Section 1910.111(b)(1) provides for various methods of
approval, including the following:    

(i) It was installed
before February 8, 1973, and was approved, tested, and installed in accordance
with either the provisions of the American National Standard for the Storage
and Handling of Anhydrous Ammonia, K61.1, or the Fertilizer Institute Standards
for the Storage and Handling of Agricultural Anhydrous Ammonia, M-1...in effect
at the time of installation; or

 

(ii) It is accepted, or certified, or listed, or
labeled, or otherwise determined to be safe by a nationally recognized testing
laboratory. 

 








Pursuant to the OSHA standard, non-refrigerated
anhydrous ammonia containers must be marked (a) with a notation AAnhydrous Ammonia@ and (b) with a marking identifying
compliance with the rules of the Code under which the container is constructed.
29 C.F.R. '
1910.111(b)(3)(ii)(a) & (b). 
Anhydrous ammonia containers must also be marked to show the maximum
level to which they may be filled with liquid anhydrous ammonia at temperatures
between 20 and 130 degrees Fahrenheit. 
29 C.F.R. '
1910.111(b)(3)(ii)(h).  The required
markings must be on the container itself or on a nameplate permanently attached
to it.  29 C.F.R. '
1910.111(b)(3)(ii)(j).

            Under the OSHA standard, all appurtenances must be
fabricated from materials proved suitable for anhydrous ammonia service.  29 C.F.R. '
1910.111(b)(6).  All piping, tubing, and
fittings must be made of material suitable for anhydrous service.  29 C.F.R. '
1910.111(b)(7). The standard also provides that brass, copper, or galvanized
steel pipe shall not be used on non-refrigerated systems.  29 C.F.R. '
1910.111(b)(7)(iv).

To satisfy its burden under Section 504.001, the
State must prove that the container in question does not meet an applicable
standard or requirement for anhydrous ammonia containers, such as the OSHA
standard, Department of Transportation regulations, or other federal or state
standards or regulations.  The State may
meet its burden by presenting testimony from witnesses who are qualified to
testify about applicable standards and requirements for anhydrous ammonia
containers.  These witnesses would include
qualified experts from the fertilizer industry and qualified engineers.

In Wootton
v. State, 132 S.W.3d 80, 89 (Tex.App. - Houston
[14th Dist.] 2004, pet=n
filed), the defendant argued that the evidence was legally and factually
insufficient to support his conviction for possession of anhydrous ammonia with
the intent to manufacture methamphetamine under TEX. HEALTH & SAFETY CODE
ANN. ' 481.124
(Vernon Supp. 2004-2005).  Section
481.124(a)(1)[2]
provides: 

(a) A person commits an offense if, with intent to
unlawfully manufacture a controlled substance, the person possesses or
transports:  

 

(1) anhydrous ammonia.  








Section 481.124(b)(1) provides:

(b) [A]n intent to unlawfully manufacture the
controlled substance methamphetamine is presumed if the actor possesses or
transports:

 

(1) anhydrous ammonia in a container or receptacle
that is not designed and manufactured to lawfully hold or transport anhydrous
ammonia.

 

Section 481.124(c)(1) provides:

 

(c) For purposes of this section, a substance is
presumed to be anhydrous ammonia if the substance is in a container or
receptacle that is:

 

(1) designed and manufactured to lawfully hold or
transport anhydrous ammonia; or 

 

(2) not designed and manufactured to lawfully hold
or transport anhydrous ammonia, if:

 

(A) a properly administered field test of the
substance using a testing device or instrument designed and manufactured for
that purpose produces a positive result for anhydrous ammonia; or 

 

(B) a laboratory test of a water solution of the
substance produces a positive result for ammonia.      

In Wootton,
police officers seized three tanks from the defendant=s
vehicle.  Wootton
v. State, supra at 89. Officer Robert Clark of the Harris County
Sheriff=s
Department testified that anhydrous ammonia tanks are typically stamped AAnhydrous Ammonia Only@ as required by the Texas Department of
Transportation.  He said that none of the
tanks that were recovered from the defendant=s
vehicle were stamped in this manner.  He
also said that two of the tanks had brass valves that had turned blue in color
and that the Ablue@ valves indicated the presence of
anhydrous ammonia.  He further said that,
had the tanks been designed or manufactured to lawfully hold anhydrous ammonia,
brass would not have come into contact with anhydrous ammonia.  Officer Clark also testified that one of the
tanks tested positive for anhydrous ammonia. 
The court held that Officer Clark=s
testimony was legally sufficient to raise the statutory presumption of intent
to manufacture methamphetamine and that the evidence was legally and factually
sufficient to support the conviction.  Wootton v. State, supra at 89.  








Wootton is
distinguishable from this case.  In this
case, the State did not present any evidence about applicable Texas Department
of Transportation requirements or any evidence similar to the Avalve@
testimony in Wootton.  While Sheriff Riley testified that he
understood that anhydrous ammonia could be held only in approved containers,
the record does not demonstrate that he had any knowledge of applicable standards
or regulations or that he was qualified as an expert to testify about
applicable standards or regulations.

There is a dearth of authority addressing the
State=s burden
of proof under statutes similar to Section 504.001.  However, the cases of State v. Olmedo, 49 P.3d 960 (Wash. App. 2002), and State v. Dunlavy, No. 21786-8-III, 2004 WL 505247 (Wash. App.
March 16, 2004)(not designated for publication), address the State=s burden under a similar statute.  In Dunlavy,
the State presented evidence that a propane tank was inadequate to store
anhydrous ammonia.  The court held that
the evidence was insufficient to support a conviction.  State v. Dunlavy,
supra at *2-3.[3]           

We find that no rational trier
of fact could have found that the tank in question was not designed and
manufactured to hold anhydrous ammonia. 
Therefore, the evidence is legally insufficient to support appellant=s conviction.  Appellant=s
fourth point of error is sustained.  In
light of our disposition of appellant=s
fourth point of error, we need not address appellant=s
remaining points of error.  TEX.R.APP.P.
47.1.[4]

                                                                This
Court=s Ruling

We reverse the judgment of the trial court and
render a judgment of acquittal.

 

TERRY McCALL

JUSTICE

September 16, 2004

Publish.  See
TEX.R.APP.P. 47.2(b).

Panel
consists of:  Arnot,
C.J., and

Wright,
J., and McCall, J.











    
[1]See, for
example: ARK. CODE ' 5-64-1301 (2004); 720 ILL. COMP. STAT. ' 21-1.5 (2004); KY. REV. STAT. ' 250.489 (2004); 
MO. STAT. ' 578.154 (2004); and WASH. REV. CODE ' 69.55.20 (2004). 






    
[2]Section 481.124 was enacted in 2001.  The offense in Wootton
was committed in 2002.  The language
added to Section 481.124(a)(3) by the 2003 amendment is not relevant to either
the Wootton case or this case.





    
[3]Although Dunlavy is
out-of-state and unpublished and, therefore, has no precedential
value, we find its facts informative and its reasoning persuasive.  





    
[4]Appellant contends that Section 504.001 of the Health
and Safety Code is unconstitutional. 
Appellate courts do not determine the constitutionality of a statute Aunless such a determination is absolutely necessary to
decide the case in which the issue is raised.@  Briggs v. State, 740 S.W.2d 803,
806-07 (Tex.Cr.App.1987).