**Opinion issued October 15, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-14-00615-CR

————————————

## DEVON HENSLEY, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

**On Appeal from the 262nd District Court**
**Harris County, Texas**
**Trial Court Case No. 1421977**

---

## MEMORANDUM OPINION

Appellant, Devon Hensley, was charged by indictment with aggravated robbery.[1] Appellant pleaded not guilty and pleaded true to an enhancement paragraph. The jury found him guilty and assessed punishment at 43 years'

---

[1] *See* TEX. PENAL CODE ANN. §§ 29.02(a)(2), 29.03(a)(2) (Vernon 2011), § 31.03(a), (b)(1) (Vernon 2011).

confinement.  In five issues, Appellant argues that the evidence is insufficient to support his conviction and that the trial court abused its discretion by denying his *Theus* motion to testify free from impeachment, allowing the State to question him about an extraneous aggravated robbery, allowing photographic exhibits pertaining to the extraneous aggravated robbery, and permitting the State to make an improper jury argument.

We affirm.

## Background

On September 7, 2013, Keanthony Wilson and Clandre Celestine went to Greenspoint Mall to attend a carnival.  Around 11:30 p.m., as the carnival was closing, Wilson and Celestine began walking back to Wilson's car.  As they neared the car, Appellant approached Wilson and asked him what time it was.  Wilson looked at his cell phone to see the time, and Appellant put a gun to his hip and demanded his keys and wallet.  Wilson and Celestine testified at trial that Appellant took Wilson's keys and vehicle, cell phone, and shoes and took Celestine's shoes and jacket.  They both also testified that they did not know Appellant prior to this incident.

Appellant presented a different version of events at trial.  He testified that he had dealt drugs to Celestine for about five years but did not really know Wilson.  Appellant claimed that there was a planned meeting for Wilson and Celestine to

2

meet with him on the night in question. They were meeting because Celestine owed Appellant money for drugs. He claimed that the meeting lasted thirty minutes. Appellant stated that Celestine had come up with the plan to give Appellant Wilson's car instead of the money he owed him, and as a result of this plan, Appellant was given the keys to Wilson's car. Appellant denied pulling out a gun, taking the car without Wilson's consent, or taking personal items from both Wilson and Celestine. During his testimony, Appellant identified Wilson and Celestine by what Appellant asserted were their street names: K and CC, respectively.

The State asserted at trial that, two days after the encounter with Wilson and Celestine, Appellant committed another aggravated robbery offense. The State presented the testimony of the complainant for that offense, William McLaughlin. McLaughlin testified that, on September 9, 2013 at about 9:30 a.m., he was sitting in the Greenspoint Mall parking lot waiting for his business meeting and reading over some of his notes. After about twenty minutes, he got out of his car to go into his trunk and retrieve his brief case. At this point, Appellant drove up to McLaughlin and asked him for directions. Immediately following, Appellant produced a handgun and told McLaughlin to give him everything he had. McLaughlin gave Appellant his wallet and told him his cell phone was in the console of his car, and that Appellant could take anything he wanted. McLaughlin

testified that, at that point, he saw an opening and jumped back into his car, shut the door, and drove off, not looking back. McLaughlin then followed an ambulance to a station, where he called the police. After making a report of the incident and speaking with robbery detectives, McLaughlin made a positive photo identification of Appellant. McLaughlin testified that he made it with ninety percent accuracy.

Appellant was arrested that same day, about an hour after McLaughlin's robbery. Deputy Kenneth Taylor was conducting traffic stops near Greenspoint Mall. Deputy Taylor ran the license plate of the car Appellant was driving, and it came back as a stolen. At that time, Appellant had already pulled into a nearby gas station, exited his vehicle, and walked inside the store. Deputy Taylor arrested Appellant. After Appellant was arrested, certain items belonging to McLaughlin were found in the car, including a laptop computer and computer bag. McLaughlin's credit card and driver's license were found in Appellant's front right pocket. Appellant initially claimed that he had found these items in the street on Ella Boulevard; however, Appellant later told Deputy Taylor that he had been given the property by a friend.

Before trial, the State served Appellant with an amended notice of intention to use evidence of Appellant's prior convictions and extraneous offenses, which included the offense against McLaughlin. Appellant filed a motion in limine

objecting in part to the list of the extraneous offenses provided in the State's notice. The trial court granted Appellant's motion in limine.

During cross-examination, the State questioned Appellant regarding his whereabouts prior to being arrested. Appellant's description of his whereabouts that morning were inconsistent with the allegations of McLaughlin's robbery. The State also asked Appellant if he knew whose things were in the car. Appellant responded that it was not his car and that the car was not in his possession so he did not know whose items they were. Immediately following Appellant's cross-examination, a bench conference took place during which the State sought permission to introduce evidence of the McLaughlin robbery. The trial court allowed it. The State then presented McLaughlin's testimony and photographic evidence concerning the robbery.

Also prior to trial, Appellant filed a motion to permit him to testify free of impeachment with prior convictions, known as a *Theus* motion.[2] Appellant argued that the prejudicial value of the convictions would outweigh the probative value as to any issue in the trial. The trial court denied the motion. During Appellant's direct examination at trial, Appellant's counsel prompted questions regarding two previous convictions of possession of a controlled substance with intent to deliver and theft. Appellant admitted having both convictions. On cross-examination, the

---

[2]     *See Theus v. State*, 845 S.W.2d 874 (Tex. Crim. App. 1992).

State further questioned Appellant regarding his criminal history, and Appellant did not object.

In closing arguments at trial, the State asserted a number of reasons why Appellant's testimony should not be believed. The State claimed that there had been no evidence that Wilson and Celestine have ever used drugs in their life and that Appellant made up nicknames for Wilson and Celestine. Appellant objected that the State's argument was outside the evidence. The trial court overruled Appellant's objection.

**Sufficiency of the Evidence**

In his first issue, Appellant argues that the evidence at trial was insufficient as a matter of law to sustain Appellant's conviction for the offense of aggravated robbery.

**A.     Standard of Review**

We review the sufficiency of the evidence establishing the elements of a criminal offense for which the State has the burden of proof under a single standard of review. *Matlock v. State*, 392 S.W.3d 662, 667 (Tex. Crim. App. 2013) (citing *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010)). This standard of review is the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013). Pursuant to this standard, evidence is insufficient to support a

conviction if, considering all the record evidence in the light most favorable to the verdict, no rational fact finder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *In re Winship*, 397 U.S. 358, 361, 90 S. Ct. 1068, 1071 (1970); *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We can hold evidence to be insufficient under the *Jackson* standard in two circumstances: (1) the record contains no evidence, or merely a "modicum" of evidence, probative of an element of the offense, or (2) the evidence conclusively establishes a reasonable doubt. *See Jackson*, 443 U.S. at 314, 318 & n.11, 320, 99 S. Ct. at 2786, 2789 & n.11; *see also Laster*, 275 S.W.3d at 518; *Williams*, 235 S.W.3d at 750.

The sufficiency-of-the-evidence standard gives full play to the responsibility of the fact finder to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). An appellate court presumes that the fact finder resolved any conflicts in the evidence in favor of the verdict and defers to that resolution, provided that the resolution is rational. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793. In viewing the record, direct and circumstantial evidence are treated equally; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and

7

circumstantial evidence alone can be sufficient to establish guilt. *Clayton*, 235 S.W.3d at 778. Finally, the "cumulative force" of all the circumstantial evidence can be sufficient for a jury to find the accused guilty beyond a reasonable doubt. *See Powell v. State*, 194 S.W.3d 503, 507 (Tex. Crim. App. 2006).

## B. Analysis

Appellant was charged with the offense of aggravated robbery. As it applies to Appellant, a person commits aggravated robbery when he "commits robbery . . . and . . . uses or exhibits a deadly weapon . . . ." TEX. PENAL CODE ANN. § 29.03(a)(2) (Vernon 2011). A person commits robbery when "in the course of committing theft . . . and with intent to obtain or maintain control of the property, he . . . intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." TEX. PENAL CODE ANN. § 29.02(a)(2) (Vernon 2011). A person commits theft when "he unlawfully appropriates property with intent to deprive the owner of property." TEX. PENAL CODE ANN. § 31.03(a) (Vernon 2011). "Appropriation of property is unlawful if it is without the owner's effective consent." *Id.* § 31.03(b)(1). Appellant claims the evidence was insufficient to establish he took anything from Wilson or Celestine without his effective consent.

Appellant testified that a drug debt existed between him and Celestine and that, when he took possession of Wilson's vehicle, it was an agreed-upon exchange for money that Celestine had owed Appellant. Appellant testified that this agreed-

upon exchange was Celestine's idea, that he was never in possession of a firearm, and that he never took any personal items from Wilson or Celestine. In contrast, Wilson and Celestine both testified that Appellant robbed them at gunpoint and took their personal items and Wilson's vehicle without their consent. Both Wilson and Celestine denied that any agreed-upon exchange for a drug debt ever existed.

Wilson's and Celestine's testimony provide evidence that everything Appellant took from them was without their effective consent. Viewing the evidence in the light most favorable to the jury's verdict, there is sufficient evidence to support this challenged element. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Laster*, 275 S.W.3d at 517 (holding courts must view evidence in light most favorable to jury's verdict in reviewing sufficiency of evidence).

In his brief, Appellant cites to a certain number of admissions and a certain number of inconsistencies by Wilson and Celestine that Appellant asserts should have led the jury to conclude that their testimony was not credible. Appellant acknowledges that appellate courts must defer to jury's determinations of credibility. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778. Nevertheless, Appellant suggests in his brief that, in certain circumstances, due process concerns allow a court to overrule a jury's credibility determination in a sufficiency-of-the-evidence review. Appellant does not provide any authority for

9

this argument,[3] explain which circumstances warrant overruling a jury's credibility determination, or in any other way develop this argument. *See* TEX. R. APP. P. 38.1(i) (requiring briefs to "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record).

We hold the evidence is sufficient to establish that Appellant took Wilson's and Celestine's belongings without their effective consent. We overrule Appellant's first issue.

### *Theus* Motion

In his second issue, Appellant argues that the trial court abused its discretion by denying his *Theus* motion to testify free from impeachment. The State argues this issue has been waived. We agree.

Before trial, Appellant filed a *Theus* motion, seeking to exclude questioning about prior convictions. *See Theus v. State*, 845 S.W.2d 874, 880–82 (Tex. Crim. App. 1992). The trial court denied the motion. During Appellant's direct

---

[3] Appellant does cite to *Stobaugh v. State*, 421 S.W.3d 787 (Tex. App.—Fort Worth 2014, pet. ref'd) in this portion of his brief. *Stobaugh* holds, however, that "when performing an evidentiary sufficiency review, [appellate courts] may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder." *Id.* at 842. Appellant provides no explanation for how this case supports his argument. The court held in *Stobaugh* that the State had failed to carry its burden on certain elements, reasoning that conflicting statements by the defendant were not sufficient to create circumstantial proof of the elements. *See id.* at 863–68. Here, the State did not rely on conflicting statements to establish guilt. Instead, Appellant is relying on purported conflicts in the evidence to claim that credibility issues were so great that the jury could not be permitted to weigh them. *Stobaugh* does not support this legal claim.

10

examination at trial, Appellant's counsel prompted questions regarding two previous convictions of possession of a controlled substance with intent to deliver and theft. Appellant admitted having both convictions. On cross-examination, the State further questioned Appellant regarding his criminal history, and Appellant did not object.

As a general rule, a defendant may not argue on appeal that evidence was improperly admitted if the defendant introduced the same evidence at trial.[4] *Wootton v. State*, 132 S.W.3d 80, 84 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd). There is an exception to this rule when the defendant introduces the evidence in an effort to "meet, rebut, destroy, deny, or explain evidence that already has been improperly admitted." *Id.* (citing *Rogers v. State*, 853 S.W.2d 29, 35 (Tex. Crim. App. 1993)). This exception, however, does not extend to the preemptive disclosure of a prior conviction made before the State offers any evidence on the issue. *See Johnson v. State*, 981 S.W.2d 759, 761 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd); *Wootton*, 132 S.W.3d at 84; *Cisneros v. State*, 290 S.W.3d 457, 468 (Tex. App.—Houston [14th Dist.] 2009, pet. dism'd).

Appellant has not identified any evidence that was improperly admitted before he testified and that his testimony of his prior convictions was meant to rebut or explain. Accordingly, Appellant's answering questions about his prior

---

[4]    *E.g.*, *Lee v. State*, 01-13-00167-CR, 2014 WL 1267031, at *1 (Tex. App.—Houston [1st Dist.] Mar. 27, 2014, no pet.).

11

convictions on direct examination waived his arguments raised in the *Theus* motion. *See Johnson*, 981 S.W.2d at 761; *Wootton*, 132 S.W.3d at 84; *Cisneros*, 290 S.W.3d at 468. We overrule Appellant's second issue.

## Admission of Extraneous Offense

In his third and fourth issues, Appellant argues that the trial court abused its discretion when it allowed testimony and photographic exhibits regarding an extraneous aggravated robbery committed by Appellant the day he was arrested.

### A. Standard of Review

When reviewing a trial court's decision on the admissibility of evidence the proper standard of review is abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). An abuse of discretion occurs when a decision "lies outside the zone of reasonable disagreement." *Id.*; *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007). A trial court's decision is generally within the "zone of reasonable disagreement" if the evidence shows that the extraneous offense is relevant and not for the purpose of showing criminal propensity, and the probative value of that evidence is not substantially outweighed by prejudice, confusion of issues, or misleading to the jury. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009). There is no abuse of discretion if the trial court's decision can by upheld by any theory of law. *Id.*

**B.     Analysis**

During trial, the trial court allowed the State to call a witness, McLaughlin, to testify about a separate offense of aggravated robbery that the State alleged Appellant also committed.  On appeal, Appellant argues the trial court abused its discretion by allowing McLaughlin to testify.

Rule 404(b) of the Texas Rules of Evidence prohibits the admission of extraneous offenses to prove conformity or propensity to commit bad acts, but allows admission to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  TEX. R. EVID. 404(b).  Exclusion of evidence under Rule 404(b) is proper when the evidence does not have any relevance apart from character conformity.  *Casey*, 215 S.W.3d at 879.  However, even if the evidence is permissible under Rule 404(b), it may still be excluded by the trial court under Rule 403 of the Texas Rules of Evidence if its probative value is substantially outweighed by the danger of prejudice.  TEX. R. EVID. 403; *Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003).

On appeal, Appellant argues that the trial court abused its discretion in allowing McLaughlin's testimony and the photographic exhibits regarding the extraneous aggravated robbery.  Relying on Rule 404(b), Appellant argues that the extraneous evidence is not admissible because it only proves character conformity and propensity to commit bad acts.  *See* TEX. R. EVID. 404(b)(1).  Relying on Rule

403, Appellant argues that, even if the extraneous evidence is admissible and relevant, its probative value does not outweigh its danger of unfair prejudice. TEX. R. EVID. 403. Further, Appellant claims that the trial court erred by not conducting a balancing test as required by *Montgomery* and Rule 403. *Id.*; *Montgomery v. State,* 810 S.W.2d 372, 395 (Tex. Crim. App. 1990).

In *Cantrell*, the Court of Criminal Appeals analyzed the admissibility of an unadjudicated offense of aggravated robbery that occurred after the aggravated robbery offense for which the defendant had been charged. *Cantrell v. State*, 731 S.W.2d 84, 88–91 (Tex. Crim. App. 1987). Under the charged offense, the complainant claimed that the defendant had confronted him about an affair that the defendant's wife confessed to having with him. *Id.* at 86. The wife had claimed that, during one of their encounters, the complainant had raped her. *Id.* at 87. The complainant testified that, during the encounter, the defendant pointed a gun and then a knife at him, threatened to cut and kill him, and demanded that the complainant write a check for $5,000 that the defendant and his wife would cash. *Id.* at 86.

The wife testified at trial that she and the defendant went over to the complainant's residence just to discuss matters with him. *Id.* at 87. She denied that the defendant had a gun or knife with him during the encounter. *Id.* at 88. She

testified that the complainant confessed to the rape and offered $5,000 as a way to make up for his actions. *Id.*

In its rebuttal phase, the State presented the testimony, over the defendant's objection, of a woman claiming that the defendant had robbed her at gunpoint. *Id.* This offense occurred about ten months later. *See id.* at 86, 88. The woman testified that she awoke one morning in her room and saw the defendant pointing a gun at her. *Id.* at 88. The defendant took the woman's jewelry, cash, and automobile. *Id.* The defendant complained on appeal that evidence of this offense should not have been admitted. *Id.*

The court recognized the general rule that admission of extraneous offenses is inherently prejudicial. *Id.* The court observed that the test for admission of extraneous offenses requires a showing that the offense is relevant to a material issue in the case and that the relevance outweighs the prejudicial effect. *Id.* at 89; *see also* TEX. R. EVID. 403, 404(b)(2). "In weighing probative value against prejudicial effect, this Court has consistently held that the State may not introduce an extraneous offense as circumstantial evidence of an element in its case-in-chief if that element can readily be inferred from other *uncontested* direct evidence." *Cantrell*, 731 S.W.2d at 89 (emphasis added). When a defensive theory presents conflicting evidence of an element of the State's burden of proof, however, the categorical prohibition is removed. *See id.*

For proof of intent, in particular, the degree of similarity between the offense under consideration and the extraneous offense "is not so great . . . as when identity is the material issue, and extraneous offenses are offered to prove modus operandi." *Id.* at 90. The court observed that the extraneous offense was relevant to prove intent and that the defense had presented evidence contesting the issue of intent. *Id.* at 91. Identity was not a contested issue for the tried offense. *Id.* at 90. The court noted, "Both the primary and extraneous offenses were aggravated robberies committed at private residences at approximately the same time of the morning. Both were committed at gunpoint shortly after the victim had awakened or was getting ready to go to work." *Id.* As a result, the court held, "There were sufficient common similar characteristics between the offenses." *Id.*

*Cantrell* is strikingly similar to this case. As in *Cantrell*, identity of Appellant was never in dispute, but intent was in dispute. Appellant admitted to being at the location in question with Wilson and Celestine but claimed that Wilson and Celestine gave him the car to settle a debt. Also as in *Cantrell*, Appellant's underlying offense and the extraneous offense were for aggravated robbery. Not only did the offenses occur in similar locations, they both occurred at the same location: the parking lot at the Greenspoint Mall. They occurred less than 48 hours apart. Both involved Appellant approaching a stranger, asking for some information, and then pointing a gun at them when the victim was distracted.

We hold there was sufficient evidence in the record to support a determination by the trial court that the extraneous offense was relevant to the State's burden of proving intent and that the prejudicial value did not substantially outweigh its probative effect. *See id.* We overrule Appellant's third and fourth issues.

## Closing Jury Argument

In his fifth issue, Appellant argues that the trial court erred when it failed to sustain Appellant's objection that the prosecution's jury argument was attempting to inject her own personal belief as to evidence, which was outside the record and improper.

## A. Standard of Review

We review a trial court's ruling on an objection to jury argument under the abuse-of-discretion standard. *See Davis v. State*, 329 S.W.3d 798, 825 (Tex. Crim. App. 2010). "[P]roper jury argument generally falls within one of four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement." *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008); *accord Alejandro v. State*, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973). Trial counsel must confine their arguments to the record and only make references to facts that are either in evidence or inferable from the evidence, otherwise their argument is improper.

*Brown*, 270 S.W.3d at 570. Ultimately, error exists when the prosecution interjects facts in their argument that are not supported by the record; however, this error is not reversible unless, in light of the record, the argument is extreme or manifestly improper. *Brown*, 270 S.W.3d at 57; *Allridge v. State*, 762 S.W.2d 146, 155 (Tex. Crim. App. 1988).

**B.      Analysis**

"A prosecutor may not use closing arguments to present evidence that is outside the record." *Freeman v. State*, 340 S.W.3d 717, 728 (Tex. Crim. App. 2011). However, a prosecutor may, in the argument, draw from the facts in evidence all inferences which are reasonable, fair, and legitimate. *Borjan v. State*, 787 S.W.2d 53, 57 (Tex. Crim. App. 1990); *Jordan v. State*, 646 S.W.2d 946, 948 (Tex. Crim. App. 1983).

In closing arguments at trial, the State asserted that Appellant's testimony should not be believed. The State's reasons included that there has been no evidence that Wilson and Celestine have ever used drugs in their life and that Appellant made up nicknames for Wilson and Celestine. Appellant objected that the State's argument was outside the evidence. However, the trial court overruled Appellant's objection. On appeal, Appellant argues that the State's closing argument was improper because the prosecutor crossed the line by injecting her own personal belief as to what the evidence was or was not.

In his testimony at trial, Appellant stated that he refers to Celestine as "CC" and Wilson as "K". Appellant then admitted that he made up his nickname for Celestine, and that he does not know if anyone else calls Celestine by this nickname. Likewise, the only evidence at trial about Wilson or Celestine being drug users came from Appellant's testimony. Both Wilson and Celestine denied having met or otherwise knowing Appellant before the robbery. Wilson and Celestine's description of events on the day in question was incompatible with Appellant's description. It is a reasonable inference from the record that Appellant's description was made up and that Wilson and Celestine's alleged drug use and alleged nicknames were facts made up in an effort to make Appellant's version sound believable.

We hold that the trial court did not err when it overruled Appellant's objection that the State's closing jury argument was improper. We overrule Appellant's fifth issue.

## Conclusion

We affirm the judgment of the trial court.

Laura Carter Higley
Justice

Panel consists of Justices Jennings, Higley, and Brown.

19

Do not publish.  TEX. R. APP. P. 47.2(b).