NO. 07-06-0163-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

NOVEMBER 15, 2007
______________________________

GEORGE W. SCOTT, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_________________________________

FROM THE 140TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2004-407,601; HONORABLE JIM BOB DARNELL, JUDGE PRESIDING
_______________________________


Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.
Â 
OPINION
Â 
Â Â Â Â Â Â Â Â Â Â Appellant George W. Scott appeals his conviction by a jury of the offense of
possession of anhydrous ammonia with the intent to manufacture methamphetamine and
his sentence of fifteen years confinement. We will affirm.
Factual and Procedural Background
Â Â Â Â Â Â Â Â Â Â On October 8, 2004, Trooper Jerry Johnson of the Texas Department of Public 
Safety stopped a 1982 Chevrolet pickup in Lubbock County driven by Kimberly Berryhill,
because he suspected a possible DWI violation. Approaching the vehicle, he first spoke
with Berryhill. Johnson determined that she was not intoxicated but her nervous behavior
raised his suspicion about other possible criminal conduct. Johnson asked Berryhill for
consent to search the pickup. At this point, Johnson encountered appellant, who was the
only other occupant of the pickup. 
Â Â Â Â Â Â Â Â Â Â Johnson testified that when he began searching the passenger side of the vehicle
he smelled an odor that he recognized as that of ammonia. Looking for the ammonia, he
then searched the pickup bed, including a mounted toolbox located immediately behind the
pickup cab. According to Johnson, âa cloud of fumesâ came from the toolbox when he
lifted its lid. Holding his breath he looked into the toolbox and observed what he described
as a propane tank with a brass fitting connected to a plastic tube. Johnson stated that he
thought the apparatus was âconsistent with when they extract the anhydrous out of tanks.â 
He opined the tank was leaking because oxidation of the brass valve causes a change of
color. 
Â Â Â Â Â Â Â Â Â Â Because of the apparent leak in the tank, Johnson contacted DPS Narcotics
Services to collect the tank. Tommy Salmon, a DPS narcotics officer, secured the tank. 
He testified it was not an approved tank for the storage or transportation of anhydrous
ammonia. The tank was field tested with a Drager pump system, which is used to detect
the presence of ammonia. The tank tested positive for ammonia. Appellant and Berryhill
were arrested. In the course of trial testimony, DPS chemist Scott Williams opined the tank
contained anhydrous ammonia. 
Â Â Â Â Â Â Â Â Â Â At trial, Johnson testified that the license plate on the pickup at the time of the stop
matched a 1979 Chevrolet Camero. Johnson had difficulty locating the vehicle
identification number because the door post sticker and dash plate were missing. He
finally located the number on a sticker in the glove box. A DPS records check revealed the
pickup was registered to Doyle Russell. When contacted by DPS, Russell reported he sold
the vehicle to a used car dealership. There was evidence that the vehicle then passed to
the hands of appellantâs father, George Scott, Sr. Evidence also showed that appellant
lived with his father at an address in Lubbock. 
Â Â Â Â Â Â Â Â Â Â Jimmy Lee Hale, a friend of appellant, testified for appellant. He said he purchased
the pickup as a âparts truckâ and last saw it in August 2004 before he began a term of
incarceration in a county jail. Hale was still in jail when appellant and Berryhill were
arrested. According to Hale, during a jail visit by his ex-wife, he instructed her to have
appellant sell the pickup and place the proceeds in his inmate trust account. Hale
acknowledged the license plate on the pickup was from a Camero he owned. He had no
explanation for the transfer. Hale said he used the address of Scottâs father for receipt of
mail but resided elsewhere.
Â Â Â Â Â Â Â Â Â Â Appellant was charged by indictment with the knowing and intentional possession
of anhydrous ammonia with the intent to manufacture methamphetamine, in violation of
section 481.124 of the Texas Controlled Substances Act. Tex. Health & Safety Code Ann.
Â§ 481.124 (Vernon 2003).


 A jury convicted appellant of the indicted offense and this
appeal followed.
Â Â Â Â Â Â Â Â Â Â Through six issues, appellant contends the trial court erred by permitting the State
to amend the indictment at trial over his objection; the court committed charge error
resulting in egregious harm to appellant; and the evidence he intentionally and knowingly
possessed anhydrous ammonia with intent to manufacture methamphetamine was legally
and factually insufficient to support his conviction. 
Issues One and Two - Amendment of Indictment
Â 
Â Â Â Â Â Â Â Â Â Â Appellantâs first and second issues assign error to what he describes as the trial
courtâs permitting the State to amend the indictment to delete the essential mental states
of âintentionallyâ and âknowingly.â By his first issue, appellant contends the amendment to
the indictment contravened article 28.10 of the Code of Criminal Procedure.


 By his
second issue, he argues the amendment effectively reduced the Stateâs burden to prove
beyond a reasonable doubt every essential element of the offense, in violation of his due
process


 rights and of section 2.01 of the Penal Code.


 Because we disagree with
appellantâs characterization of the trial courtâs action as an amendment of the indictment,
we overrule the issues. 
Â Â Â Â Â Â Â Â Â Â As noted, appellant was charged with and convicted of the second-degree felony
offense of possession of anhydrous ammonia with intent to manufacture a controlled
substance in violation of section 481.124(a). As relevant to this case, under that statute,
a person commits an offense if, with intent to unlawfully manufacture a controlled
substance, the person possesses or transports anhydrous ammonia. See section
481.124(a). 
Â Â Â Â Â Â Â Â Â Â Appellantâs indictment read as follows:
In Lubbock County, Texas, GEORGE SCOTT, hereinafter styled the
Defendant, heretofore on or about the 8th day of October, A.D. 2004, did
intentionally and knowingly possess anhydrous ammonia with intent to
unlawfully manufacture a controlled substance, to-wit: Methamphetamine;
AGAINST THE PEACE AND DIGNITY OF THE STATE. (emphasis added).
Â Â Â Â Â Â Â Â Â Â On the second day of trial, during the Stateâs case, the State asked to âabandonâ
the indictmentâs allegations of âintentionally and knowinglyâ as they pertained to the
element of possession. The State argued the allegations were not required by the statute,
but were mere surplusage. The State concluded by asking that the words âintentionally
and knowinglyâ not be put in the courtâs charge to the jury. The defense objected,
contending the language was not surplusage. Stating its opinion that âintent is alleged with
regard to possession with intent to unlawfully manufacture,â the court granted the ârequest
to deleteâ the words. 
Â Â Â Â Â Â Â Â Â Â When the courtâs charge was presented to the jury, the application paragraph read,
in relevant part, as follows:
Now bearing in mind the foregoing instructions, if you find from the evidence
beyond a reasonable doubt that on or about October 8, 2004, in Lubbock
County, Texas, the defendant, GEORGE SCOTT, . . . , did then and there
possess anhydrous ammonia with intent to unlawfully manufacture a
controlled substance, to-wit: Methamphetamine, then you will find the
defendant guilty of the offense of possession of certain chemicals with intent
to manufacture a controlled substance, namely, Methamphetamine; . . . .
Â 
Â Â Â Â Â Â Â Â Â Â The record does not reflect the indictment was altered. Assuming the Stateâs
request amounted to a motion to amend the indictment, neither such a motion by the State,
nor the trial courtâs granting of the motion, constitute amendment of an indictment. Ward
v. State, 829 S.W.2d 787, 793 (Tex.Crim.App. 1992), overruled in part, Riney v. State, 28
S.W.3d 561, 566 (Tex.Crim.App. 2000) (overruling Ward to the extent it required physical
interlineation of the original indictment as the only means to accomplish an amendment). 
An amendment is effectuated either by the physical alteration of the original indictment
itself, or by the incorporation into the record of a new document to serve as the âofficialâ
indictment. Ward, 829 S.W.2d at 793; Riney, 28 S.W.3d at 565-66. Because the
indictment in this case was never physically altered, nor was an altered indictment
substituted, there was no amendment and the original unmodified indictment remained in
full force and effect. See Ward, 829 S.W.2d at 795. 
Â 
Â 
Issues Five and Six - Charge Error
Â Â Â Â Â Â Â Â Â Â We next turn to appellantâs issues five and six, asserting jury charge error. By his
fifth issue, appellant contends the court erred by omitting from the charge language
requiring the jury to find he intentionally and knowingly possessed anhydrous ammonia,
and by his sixth issue, argues the courtâs charge impermissibly converted the offense into
a strict liability crime while shifting to him the burden to prove he lacked intent to
manufacture methamphetamine. Because of the factual interrelationship of all appellantâs
issues, we necessarily consider here some of the arguments appellant made in support
of his first two issues.
Â Â Â Â Â Â Â Â Â Â Appellant argues section 481.124(a) requires proof that his possession of anhydrous
ammonia was accompanied by a culpable mental state. The State responds that the
culpable mental state required by the statuteâs express terms is the intent to manufacture
methamphetamine. From that statutory language, it argues no additional mental state
need be shown with respect to the defendantâs possession. 
Â Â Â Â Â Â Â Â Â Â The State further argues that a knowing mental state necessarily is encompassed
within the intent to manufacture methamphetamine because it is not possible for a
defendant to possess an ingredient of methamphetamine unknowingly yet possess it with
the intent to manufacture the controlled substance. The difficulty with this position is
section 481.124(b)(1) permits the jury to presume the defendant had the intent to
manufacture the controlled substance if it finds he possessed anhydrous ammonia in a
container not designed or manufactured for that purpose. If the State is not required to
prove that the defendantâs possession was at least reckless, a conviction under this statute
may occur without any evidence at all of a culpable mental state accompanying the
defendantâs actions.
Â Â Â Â Â Â Â Â Â Â The absence of language in section 481.124(a) specifying a culpable mental state
as to the element of possession does not establish that the legislature intended to
dispense with a culpable mental state. See Tex. Penal Code Ann. Â§ 6.02(b) (Vernon 2003)
(stating that if the definition of an offense does not prescribe a culpable mental state, a
culpable mental state is nevertheless required unless the definition âplainly dispensesâ with
any mental element); Aguirre v. State, 22 S.W.3d 463, 470-77 (Tex.Crim.App. 1999)
(construing Â§ 6.02(b) and setting forth factors to be reviewed in determining whether or not
a statute plainly dispenses with a mental state element). The court in Wootton v. State,
132 S.W.3d 80, 86 (Tex.App.âHouston [14th Dist.] 2004, pet. refâd) found that the
possession of anhydrous ammonia under section 481.124(a) must be accompanied by a
culpable mental state. We agree, and find that because section 481.124(a) does not
specify a culpable mental state as to the element of possession, section 6.02(c) of the
Penal Code requires that the mental state amount to at least recklessness. Aguirre, 22
S.W.3d at 472; Wootton, 132 S.W.3d at 86. Â Â Â Â Â Â Â Â Â Â Â Â 
Â Â Â Â Â Â Â Â Â Â Because we conclude guilt under the statute requires proof appellantâs possession
of anhydrous ammonia was accompanied by a culpable mental state, the court erred by
failing to charge the jury on possession of ammonia with the culpable mental states alleged
by the indictment; viz., intentionally and knowingly. See Dinkins v. State, 894 S.W.2d 330,
339 (Tex.Crim.App. 1995), cert. denied, 516 U.S. 832, 116 S. Ct. 106, 133 L. Ed. 2d 59
(1995) ("the charge must contain an accurate statement of the law and must set out all the
essential elements of the offense."). See also Reed v. State, 117 S.W.3d 260, 265
(Tex.Crim.App. 2003) (when not referring to lesser included offense, inclusion in charge
of recklessness as culpable mental state is error when indictment alleged only intentional
and knowing conduct). 
Â Â Â Â Â Â Â Â Â Â Having found error in the charge, we now consider whether harm resulted. 
Because appellant did not object to the omission of intentionally and knowingly from the
application paragraph of the charge, we reverse the judgment only if the error caused
appellant such âegregious harmâ that it deprived him of a fair and impartial trial. Martin v.
State, 200 S.W.3d 635, 639-40 (Tex.Crim.App. 2006); Hutch v. State, 922 S.W.2d 166,
171 (Tex.Crim.App. 1996); Almanza v. State, 686 S.W.2d 157, 171 (Tex.Crim.App. 1985)
(op. on rehâg). "Jury-charge error is egregiously harmful if it affects the very basis of the
case, deprives the defendant of a valuable right, or vitally affects a defensive theory." 
Stuhler v. State, 218 S.W.3d 706, 719 (Tex.Crim.App. 2007). The record must show the
defendant suffered actual, rather than merely theoretical, harm from the jury instruction
error. Almanza, 686 S.W.2d at 174. Our review for egregious harm requires consideration
of the entire charge, the evidence including the contested issues and weight of the
probative evidence, the arguments of counsel, and any other relevant information revealed
by the record of the trial as a whole. Stuhler, 218 S.W.3d at 719. Evaluation of those
factors convinces us that the defects in the charge did not cause appellant egregious harm.
Â Â Â Â Â Â Â Â Â Â We begin with the charge. In addition to the application paragraph, our review of
the entire charge must include consideration of the definitions. Here, the charge contained
the following:
By the term âpossessionâ is meant the actual care, custody, control or
management. Possession is a voluntary act if the possessor knowingly
obtains or receives the thing possessed or is aware of his control of the thing
for a sufficient time to permit him to terminate his control.
Â 
A person commits an offense only if he voluntarily engages in conduct,
including an act, an omission, or possession.
Â 
The chargeâs definition of possession is taken from section 481 of the Health and Safety
Code.


 The remaining language we have quoted is taken from section 6.01(a) and (b) of
the Penal Code. Subsection (a) codifies the common law rule that a voluntary act or
omission is a predicate to criminal responsibility. See Seth S. Searcy III & James R.
Patterson, Vernonâs Annotated Penal Code, Â§ 6.01, Practice Commentary, p. 80 (West
1974). The provisions of section 6.01 focus on the actus reus requirement for criminal
responsibility, while the mental state requirement is addressed in section 6.02. Rogers v.
State, 105 S.W.3d 630, 637 (Tex.Crim.App. 2003).
Â Â Â Â Â Â Â Â Â Â Had the courtâs charge contained the âintentional and knowingâ mental state
requirement as to appellantâs possession of the anhydrous ammonia, it would have
contained the definition of knowing action from Penal Code section 6.03(b), which reads: 
âA person acts knowingly, or with knowledge, with respect to the nature of his conduct or
to circumstances surrounding his conduct when he is aware of the nature of his conduct
or that the circumstances exist.â Tex. Penal Code Ann. Â§ 6.03(b) (Vernon 2003). Â 
Â Â Â Â Â Â Â Â Â Â Under the charge as given, to find that appellantâs possession of the ammonia was
a voluntary act, the jury must have found he at least was âaware of his controlâ of it. The
charge thus placed before the jury the requirement that the State prove appellant had an
awareness of the ammonia in the vehicle. That the wording came from section 6.01(b)
rather than section 6.03(b) does not show egregious harm to appellant. 
Â Â Â Â Â Â Â Â Â Â The contested issues at trial and the arguments of counsel concerning those issues
further support our conclusion that appellant did not suffer egregious harm from the courtâs
charge error. After concluding that the possession of anhydrous ammonia must be
accompanied by a culpable mental state to violate section 481.124, the court in Wootton
found case law construing the definition of possession in the context of knowing or
intentional possession of a controlled substance to be âinstructiveâ in its analysis of the
issue before it. 132 S.W.3d at 86. As the court there noted, to establish the unlawful
possession of a controlled substance, the State must show that the defendant (1)
exercised actual care, control or custody over the substance, and (2) was conscious of his
connection with it and knew what it was. Id., citing Brown v. State, 911 S.W.2d 744, 747
(Tex.Crim.App. 1995).


 When, like here, a defendant is not in sole control of the place
where contraband is found, his knowing possession of the contraband typically is evaluated
through a links analysis, by which the State must demonstrate that the defendantâs
connection with the contraband was not merely fortuitous. Wootton, 132 S.W.3d at 86; see
Evans v. State, 202 S.W.3d 158, 161 (Tex.Crim.App. 2006) (applying analysis). We will
discuss the evidence in more detail under our analysis of appellantâs third and fourth
issues, but for present purposes we note simply that the case was tried like a controlled
substance possession case. The State emphasized the evidence showing appellantâs
connection with the pickup, the ammonia odor that was present, the location of the tank
behind the passenger side of the pickup, and his tools in the pickup to link appellant with
the ammonia. The defense attempted to discount the same factors. 
Â Â Â Â Â Â Â Â Â Â During voir dire, the State and appellant discussed the Stateâs burden to prove, inter
alia, appellant intentionally and knowingly possessed anhydrous ammonia. The prosecutor
explained for the veniremen the State must prove appellant intentionally and knowingly
possessed anhydrous ammonia. Panel members expressed understanding of the terms
in conjunction with the Stateâs burden of proof. 
Â Â Â Â Â Â Â Â Â Â The indictment, read in open court before the jury, averred appellant âintentionally
and knowinglyâ possessed the anhydrous ammonia. Â Â 
Â Â Â Â Â Â Â Â Â Â The arguments of counsel also emphasized the Stateâs burden to show appellant
was aware of the presence of the ammonia. When reviewing the charge with the jury
during final argument, the prosecutor told them that the definition of possession was âthe
most important thing for you to deliberate on.â When discussing extraneous offenses she
told the jury it could consider such evidence in âdetermining whether or not this [d]efendant
had knowledge, had the intent, preparation, plan knowledge [sic] to possess the anhydrous
ammonia.â She returned to the issue of possession later in her argument and read the
definition and the âvoluntary actâ language from the charge. From that and other instances,
the Stateâs argument made clear that the jury must find appellant was aware the ammonia
was present to convict him as the possessor. 
Â Â Â Â Â Â Â Â Â Â Appellantâs counsel also walked the jury through the definition of possession in the
charge and agreed with the prosecutor that possession âis the crucial part of this trial.â He
proceeded to read the definition of possession and emphasized the requirement of
voluntary possession. Counsel argued further, âWhat does this boil down to? I think yâall
have kind of picked up on this, Iâm sure you have. Knowledge. Knowledge is what weâre
talking about. The State is trying to show you that Mr. Scott had knowledge of what was
in that pickup.â After attacking each of the links argued by the State, he concluded by
emphasizing the knowledge required for voluntary possession. The Stateâs closing
argument contains nothing suggesting that the jury could convict appellant without finding
he was aware the ammonia was in the truck.
Â Â Â Â Â Â Â Â Â Â Having considered the entire charge, the evidence presented and the arguments
of counsel, we conclude appellant has not shown the omission of the intentional or
knowing mental state modifying possession in the courtâs charge caused him such
egregious harm as to deny him a fair and impartial trial. Appellantâs fifth issue is overruled.
Â Â Â Â Â Â Â Â Â Â By his sixth issue, appellant raises an additional claim of charge error. Here he
contends the presumption of intent to manufacture created by section 481.124(b)
improperly shifted the burden to him to disprove intent. We disagree.
Â Â Â Â Â Â Â Â Â Â As explained above, because appellant made no objection to the charge, if we find
error our review is limited to whether the error produced egregious harm for appellant. 
Â Â Â Â Â Â Â Â Â Â The jury was instructed from section 481.124(b) of events that if found beyond a
reasonable doubt raise a presumption of intent to unlawfully manufacture
methamphetamine. One event the charge listed was possession of anhydrous ammonia
in an unauthorized container. In the same numbered section of the charge the court added
the instruction of Penal Code section 2.05(a)(2). Tex. Pen. Code Ann. Â§ 2.05(a)(2)
(Vernon 2003). The section 2.05 instruction converted the mandatory presumption of
section 481.124(b) into a permissive presumption. See Willis v. State, 790 S.W.2d 307,
310 (Tex.Crim.App. 1990) (permissive presumption allows but does not require jury to infer
fact from predicate fact). Permissive presumptions do not lessen the State's burden of
proof. Id. A permissive presumption places no burden on the accused to disprove the
presumed fact. Id. 
Â Â Â Â Â Â Â Â Â Â To convict appellant, the jury had to find appellant intended to unlawfully
manufacture methamphetamine. If it credited the predicate evidence of possession so that
it could rightly presume intent to manufacture, it was only after hearing evidence and
argument that appellant knowingly possessed anhydrous ammonia in an unauthorized
container.
Â Â Â Â Â Â Â Â Â Â We find the court did not err in charging the jury on the presumption of intent to
manufacture arising from possession in an unauthorized container. The burden of proof
of intent to manufacture was not shifted to appellant. We overrule appellantâs sixth issue.
Issues Three and Four - Sufficiency of Evidence 
Â Â Â Â Â Â Â Â Â Â Â Â In reviewing the legal sufficiency of the evidence to support a conviction, we view
all the evidence in the light most favorable to the verdict in order to determine whether any
rational trier of fact could have found the essential elements of the crime beyond a
reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed.
2d 560 (1979); Hampton v. State, 165 S.W.3d 691, 693 (Tex.Crim.App. 2005). The
standard is the same whether applied to direct or circumstantial evidence. Hooper v. State,
214 S.W.3d 9, 13 (Tex.Crim.App. 2007). The standard fully recognizes the responsibility
of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw
reasonable inferences from basic facts to ultimate facts. Jackson, 443 U.S. at 319. The
trier of fact is the sole judge of the weight and credibility of the evidence. See Tex. Code
Crim. Proc. Ann. art. 38.04 (Vernon 1979). This means when performing a legal
sufficiency review we may not re-evaluate the weight and credibility of the evidence and
substitute our judgment for that of the trier of fact. Dewberry v. State, 4 S.W.3d 735, 740
(Tex.Crim.App. 1999), cert. denied, 529 U.S. 1131, 120 S. Ct. 2008, 146 L. Ed. 2d 958
(2000). We resolve any inconsistencies in the evidence in favor of the verdict. Curry v.
State, 30 S.W.3d 394, 406 (Tex.Crim.App. 2000). The sufficiency of the evidence should
be measured by the elements of the offense as defined by the hypothetically correct jury
charge for the case. Malik v. State, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997); Barnum
v. State, 7 S.W.3d 782, 787-88 (Tex.App.âAmarillo 1999, pet.refâd). To prove by factual
links an accusedâs care, custody, or control of contraband it is not the number of links that
is dispositive, but rather the logical force of all of the evidence, direct and circumstantial. 
Evans v. State, 202 S.W.3d 158, 162 (Tex.Crim.App. 2006).
Â Â Â Â Â Â Â Â Â Â Evidence supporting guilt, though legally sufficient, may be factually insufficient
because it is so weak that the juryâs verdict seems clearly wrong and manifestly unjust, or 
because evidence contrary to the verdict is such that the juryâs verdict is against the great
weight and preponderance of the evidence. Marshall v. State, 210 S.W.3d 618, 625
(Tex.Crim.App. 2006); Watson v. State, 204 S.W.3d 404, 414-15 (Tex.Crim.App. 2006);
Johnson v. State, 23 S.W.3d 1, 11 (Tex.Crim.App. 2000). In a factual sufficiency review,
we consider all the evidence, in a neutral light. Marshall, 210 S.W.3d at 625; Watson, 204
S.W.3d at 414. Although an appellate courtâs authority to review factual sufficiency permits
the court to disagree with the fact finderâs determinations, the appellate court must accord
them due deference, particularly those determinations concerning the weight and credibility
of the evidence. Johnson, 23 S.W.3d at 9. When there is a conflict in the evidence, we
may not find the evidence factually insufficient simply because we disagree with the juryâs
resolution of the conflict. Rather, we must first be able to say, with some objective basis
in the record, that the great weight and preponderance of all the evidence contradicts the
juryâs verdict. Watson, 204 S.W.3d at 417. We must also discuss the evidence that,
according to the appellant, most undermines the jury's verdict. Sims v. State, 99 S.W.3d
600, 603 (Tex.Crim.App. 2003). 
Â Â Â Â Â Â Â Â Â Â Turning first to the question of intentional and knowing possession of anhydrous
ammonia, we note appellant was the lone passenger of the pickup driven by Berryhill. 
Trooper Johnson testified that in response to his inquiry of their origin and destination,
appellant said he and Berryhill had just âpicked upâ the vehicle. Berryhill gave Johnson
permission to search the vehicle. According to Johnson, appellant appeared worried on
learning of Berryhillâs consent to search. Johnson opined that appellantâs countenance
conveyed âa look that the knew he was in trouble.â While searching the passenger side
of the vehicle Johnson encountered an odor that he ârecognized...right of[f] the bat to be
ammonia.â In the toolbox of the pickup, Johnson discovered an unauthorized container
that according to a subsequent test contained anhydrous ammonia. The toolbox was
located directly behind appellant in the bed of the vehicle. 
Â Â Â Â Â Â Â Â Â Â The jury could have believed appellant possessed a measure of control of the
vehicle at the time of the stop by Johnson. Specifically, Jimmy Lee Hale testified he owned
the pickup and, from jail, gave instructions for appellant to sell the vehicle for him and place
the proceeds in his inmate trust account. According to Hale, from time to time appellant
borrowed the truck for use in his roofing business. Johnson testified some items in the bed
of the truck at the time of the stop, including a toolbox, tools, cooler and wheelbarrow,
belonged to appellant and his father. There was also evidence at trial that the DPS
previously stopped appellant for a traffic violation while he was driving the pickup. 
Â Â Â Â Â Â Â Â Â Â We find that the logical force of all the evidence sufficiently linked appellant to the
propane tank in the vehicle. Accordingly, we conclude that the evidence appellant
intentionally and knowingly possessed the anhydrous ammonia Trooper Johnson found
in the pickup was legally and factually sufficient. We overrule issues three and four as they
pertain to the issue of possession of anhydrous ammonia.
Â Â Â Â Â Â Â Â Â Â Appellant further challenges the sufficiency of the Stateâs proof that the tank in
question contained anhydrous ammonia. The State relies on a statutory presumption to
establish this element. Applicable to this case, section 481.124 provides that a substance
in a container or receptacle not designed and manufactured to lawfully hold or transport
anhydrous ammonia is âpresumedâ to be anhydrous ammonia if a properly administered
field test of the substance using a testing device or instrument designed and manufactured
for that purpose produces a positive result for anhydrous ammonia. 
Â Â Â Â Â Â Â Â Â Â DPS narcotics officer Tommy Salmon testified that a propane tank is not an
approved container for anhydrous ammonia. At the stop location, Salmon tested the
contents of the propane tank in question with a Drager pump system, which, according to
his testimony, is a test for determining the presence of ammonia. Salmon testified in his
opinion the tank contained ammonia. DPS chemist Scott Williams rendered the opinion
at trial that the tank in question contained anhydrous ammonia. There was no contrary
evidence. Therefore, the jury was allowed to âpresumeâ that the tank contained anhydrous
ammonia. We overrule issues three and four as they pertain to the issue of the presence
of anhydrous ammonia.
Â Â Â Â Â Â Â Â Â Â The final element of the Stateâs case challenged by appellant was proof of intent to
manufacture methamphetamine. Trooper Salmon testified without objection that, based
on his training and experience as a narcotics officer, anhydrous ammonia has two uses:
as a fertilizer in farming and to manufacture methamphetamine. Earlier in trial, Trooper
Johnson rendered the same opinion. DPS chemist Scott Williams explained anhydrous
ammonia is lawfully used as fertilizer and unlawfully used in the manufacture of
methamphetamine. Under section 481.124 an intent to unlawfully manufacture the
controlled substance methamphetamine is presumed if the actor possesses or transports
anhydrous ammonia in a container or receptacle that is not designed and manufactured
to lawfully hold or transport anhydrous ammonia. See section 481.124(b)(1). 
Â Â Â Â Â Â Â Â Â Â According to Salmon and Williams, those using anhydrous ammonia for agriculture
must keep the substance in an approved container, and a propane tank is not an approved
container. As to these facts there was not contrary evidence. Therefore, the jury was free
to âpresumeâ appellant possessed the intent to manufacture methamphetamine, provided
they found the container or receptacle in his possession actually contained anhydrous
ammonia. See section 481.124(b)(1). Issues three and four are overruled as to the
element of âintent to manufactureâ methamphetamine.
Â Â Â Â Â Â Â Â Â Â In his factual sufficiency challenge, appellant assails the strength of evidence linking
him to the ammonia by urging the implausibility of the tank leaking at the time of the stop. 
Otherwise, argues appellant, Johnson would have smelled the ammonia at the inception
of the stop. To follow this logic means, and as appellant claims, the tank suddenly began
leaking during the stop. Johnsonâs testimony was not presented according to a time line. 
Neither side presented evidence of the lapse between the inception of the stop and the
moment Johnson initially smelled ammonia. Johnson did testify he âimmediatelyâ took
Berryhill to the rear of his patrol car and smelled ammonia when he began searching the
passenger side of the pickup. Moreover, appellantâs link to the ammonia was shown by
the evidence of possession which is detailed above. 
Â Â Â Â Â Â Â Â Â Â Having considered all the evidence in a neutral light, we find the jury was rationally
justified in finding beyond a reasonable doubt that appellant intentionally and knowingly
possessed anhydrous ammonia with intent to manufacture the controlled substance,
methamphetamine. Likewise, we do not find the juryâs verdict so against the great weight
and preponderance of the evidence to be clearly wrong and manifestly unjust. We overrule
appellantâs third and fourth issues.
Conclusion
Â Â Â Â Â Â Â Â Â Â Having overruled each of appellantâs issues, we affirm the judgment of the trial
court.
Â Â Â Â Â Â Â Â Â Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â James T. Campbell

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice



Publish. 



Quinn, C.J., concurring.

Pirtle, J., dissenting.



de
v. State, 214 S.W.3d.17, 25 (Tex.Crim.App.
2007).  When the record is silent as to
the reasons for the trial judgeÂs ruling, or when there are no explicit fact
findings and neither party timely requested findings and conclusions, we imply
the necessary findings that would support the trial courtÂs ruling if evidence,
when viewed in the light most favorable to the trial courtÂs ruling, supports
those findings.Â  See State v.
Garcia-Cantu, 253 S.W.3d 236, 241 (Tex.Crim.App.
2008)Â  We will sustain the trial courtÂs
ruling if that ruling is reasonably supported by the record and is correct on
any theory of law applicable to the case.Â 
Valtierra, 310 S.W.3d
at 447.

Â 

Â 

Analysis

AppellantÂs position may be summed up
by saying that nothing short of an affirmative statement from a person in
custody that he waives his right to remain silent will suffice to support the
submission of his custodial statement to a jury.Â  However, such is not the law in Texas.

Before any oral statement that
results from custodial interrogation may be used against a defendant, the
defendant must be warned of his rights.Â  See
Tex. Code Crim. Proc.
Ann. art. 38.22, Â§ 3(a)(2) (West 2005),[3]
Miranda, 384 U.S. at 467-68.Â  The
waiver of the rights granted a defendant must be made knowingly, intelligently,
and voluntarily.Â  art.
38.22, Â§ 3(a)(2).Â 
In ascertaining the voluntariness of an oral statement, the court looks
to the totality of the circumstances surrounding the statement.Â  See Smith v. State, No. AP-75,793, 2010 Tex. Crim. App. Unpub.
LEXIS 582, at *12 (Tex.Crim.App.
Sep. 29, 2010) (citing Barefield v. State,
784 S.W.2d 38, 40-41 (Tex.Crim.App. 1989)).Â  A waiver of rights may be inferred from the
actions and words of the defendant.Â  Id. at *11.Â 
Finally, the court does not require an Âexpress verbal statement from an
accused that he waives his rights prior to giving the statement.Â Â Barefield, 784 S.W.2d at 40-41.Â  

When we apply the guidance mentioned
above to the record before us, we find that the officer properly warned
appellant regarding his rights and that appellant understood those rights,
including the right to remain silent.Â 
Further, the officer inquired as to whether appellant wanted to answer a
few questions.Â  To this inquiry,
appellant answered, ÂUh yes. I donÂt mind.ÂÂ 
The officer then proceeded to ask the questions at issue and appellant
answered the questions without any objection.Â 
The questions asked went to the heart of the issues to be resolved in a
DWI prosecution.Â  Specifically, appellant
admitted to operating a motor vehicle at the time in question and that he had
been drinking alcohol, although he denied being under the influence of alcohol
at the time of his arrest.Â  Appellant
never requested to stop the interview nor to be
allowed to contact an attorney, although the record clearly demonstrates he was
made aware of these rights.Â  Therefore,
under the facts and circumstances of this case, we find that the trial courtÂs
decision to overrule appellantÂs objection to the use of the recorded statement
is supported by the record.Â  See Valtierra, 310 S.W.3d at 447.Â  AppellantÂs issue is overruled.

Conclusion

Having overruled appellantÂs sole
issue, the judgment of the trial court is affirmed.

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Mackey
K. Hancock

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Justice








Â 

Do
not publish.Â  

Â 











[1] See Tex.
Penal Code Ann. Â§ 49.04(a)
(West 2003).

Â 





[2] See Miranda v. Arizona, 384 U.S. 436,
467-68, 86 S.Ct. 1602, 16 L.Ed. 2d 694 (1966).





[3] Further reference to the Texas Code of Criminal
Procedure shall be by reference to Âart. _____.Â