NO. 07-08-0096-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

FEBRUARY 27, 2008

___________________

IN RE DEWEY MACK EVANS, RELATOR

_______________________________

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.
MEMORANDUM OPINION
          Relator, Dewey Mack Evans, has filed a petition for writ of mandamus seeking to
compel the Honorable Hal Miner, Judge of the 47th District Court of Randall County,
Texas, to appoint counsel to represent him in his appeal in Cause Number 07-07-0377-CR. 
We deny the request.
          Evans was convicted of aggravated kidnapping, enhanced, in Cause Number
19,095-A. The trial court signed an order appointing James E. Wooldridge to represent
him during trial. Following Evans’s conviction for the charged offense, Wooldridge filed a
notice of appeal in this Court. In October 2007, Evans filed a pro se Motion for Abatement
of Appeal in this Court.


 By letter dated October 30th, this Court notified Evans that
Wooldridge was his attorney of record in his direct appeal and that no further action on
future pro se filings would be taken. 
          Evans has now filed an original proceeding accompanied by two exhibits–Exhibit A,
which is a Request for Appointment of Counsel and Exhibit B, which is a letter from
Wooldridge to Evans, dated October 30, 2007, which Evans categorizes as a
“nonrepresentation notice” per Rule 6.4 of the Texas Rules of Appellate Procedure. Evans
alleges he filed Exhibit A with the trial court on January 7, 2008; it does not, however, bear
a file stamp. Exhibit B provides in part:
since the Court has still not appointed an appellate attorney for you (in
anticipation of your retention of such counsel), technically I still represent
you. The issue will not come to a head until such time as the reporter’s
record has been filed (presently due December 14th), triggering the deadline
for filing the brief on your behalf. At such time, if I still have not been
retained by you, the Court will appoint your counsel. If you still desire to
retain me, please inform your agent(s) that I will have to be paid in full by
December 14th.
 
          “Mandamus issues only to correct a clear abuse of discretion or the violation of a
duty imposed by law when there is no other adequate remedy by law.” Walker v. Packer,
827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding), quoting Johnson v. Fourth Court of
Appeals, 700 S.W.2d 916, 917 (Tex. 1985) (orig. proceeding). To show entitlement to
mandamus relief, a relator must (1) show that he has no adequate remedy at law to
redress the alleged harm and (2) the act sought to be compelled is ministerial and does
not involve a discretionary or judicial decision. State ex rel. Young v. Sixth Judicial Dist.
Court of Appeals, 236 S.W.3d 207, 210 (Tex.Crim.App. 2007). State ex rel. Rosenthal v.
Poe, 98 S.W.3d 194, 198 (Tex.Crim.App. 2003). A relator must also demonstrate
entitlement to mandamus relief by showing (1) a legal duty to perform; (2) a demand for
performance; and (3) refusal of that demand. See Stoner v. Massey, 586 S.W.2d 843, 846
(Tex. 1979).
          When a motion is properly pending before a trial court, the act of considering and
ruling upon the motion is a ministerial act. Eli Lilly and Co. v. Marshall, 829 S.W.2d 157,
158 (Tex. 1992). However, the trial court has a reasonable time within which to perform
that ministerial duty. Safety-Kleen Corp. v. Garcia, 945 S.W.2d 268, 269 (Tex.App.–San
Antonio 1997, orig. proceeding). Whether a reasonable period of time has lapsed is
dependent on the circumstances of each case. Barnes v. State, 832 S.W.2d 424, 426,
(Tex.App.–Houston [1st Dist.] 1992, orig. proceeding). Other factors are influential such
as the trial court’s actual knowledge of the motion, its overt refusal to act, the state of its
docket, and other judicial and administrative duties which must be addressed. In re
Villarreal, 96 S.W.3d 708, 711 (Tex.App.–Amarillo 2003, orig. proceeding). Further, the
party requesting relief must provide a sufficient record to establish his entitlement to
mandamus relief. See Walker, 827 S.W.2d at 837. See also In re Bates, 65 S.W.3d 133,
135 (Tex.App.–Amarillo 2001, orig. proceeding). 
          Evans alleges he filed his Request for Appointment of Counsel with the trial court
on January 7, 2008. His petition for writ of mandamus was filed in this Court on February
25, 2008. We acknowledge that a trial court has a duty to consider and resolve motions
within a reasonable time. However, less than two months have lapsed since Evans filed
his request. Furthermore, Evans has failed to show that the request has been brought to
the attention of the trial court and that it refused to act. See In re Villarreal, 96 S.W.3d at
710 n.2.
          Moreover, an attorney appointed to represent an indigent defendant at trial remains
as the attorney of record until the appeal is exhausted or the attorney is relieved of his
duties by the trial court or replaced by other counsel. Tex. Code Crim. Proc. Ann. art.
26.04(j)(2) (Vernon 2005). In a criminal case, an attorney appointed by the trial court to
represent an indigent party cannot file a Nonrepresentation Notice. See Tex. R. App. P.
6.4(b). 
          There is nothing in the clerk’s record in Cause Number 07-07-0377-CR to reflect
that Wooldridge has been relieved of his duties by the trial court or replaced by other
counsel. Additionally, Wooldridge has continued to represent Evans on appeal and has
filed two motions for extensions of time in which to file a brief in Evans’s behalf. The
current deadline in which to file the brief is March 12, 2008. Without an order from the trial
court relieving Wooldridge as Evans’s appointed counsel, he remains the attorney of
record in Evans’s direct appeal and is expected to file Evans’s brief on or before March 12,
2008. Evans has not demonstrated he is without an adequate remedy at law as he is
already represented by counsel on appeal. 
          Consequently, Evans’s petition for writ of mandamus is denied.
                                                                           Per Curiam



0;      Appellant’s first and second issues assign error to what he describes as the trial
court’s permitting the State to amend the indictment to delete the essential mental states
of “intentionally” and “knowingly.” By his first issue, appellant contends the amendment to
the indictment contravened article 28.10 of the Code of Criminal Procedure.


 By his
second issue, he argues the amendment effectively reduced the State’s burden to prove
beyond a reasonable doubt every essential element of the offense, in violation of his due
process


 rights and of section 2.01 of the Penal Code.


 Because we disagree with
appellant’s characterization of the trial court’s action as an amendment of the indictment,
we overrule the issues. 
          As noted, appellant was charged with and convicted of the second-degree felony
offense of possession of anhydrous ammonia with intent to manufacture a controlled
substance in violation of section 481.124(a). As relevant to this case, under that statute,
a person commits an offense if, with intent to unlawfully manufacture a controlled
substance, the person possesses or transports anhydrous ammonia. See section
481.124(a). 
          Appellant’s indictment read as follows:
In Lubbock County, Texas, GEORGE SCOTT, hereinafter styled the
Defendant, heretofore on or about the 8th day of October, A.D. 2004, did
intentionally and knowingly possess anhydrous ammonia with intent to
unlawfully manufacture a controlled substance, to-wit: Methamphetamine;
AGAINST THE PEACE AND DIGNITY OF THE STATE. (emphasis added).
          On the second day of trial, during the State’s case, the State asked to “abandon”
the indictment’s allegations of “intentionally and knowingly” as they pertained to the
element of possession. The State argued the allegations were not required by the statute,
but were mere surplusage. The State concluded by asking that the words “intentionally
and knowingly” not be put in the court’s charge to the jury. The defense objected,
contending the language was not surplusage. Stating its opinion that “intent is alleged with
regard to possession with intent to unlawfully manufacture,” the court granted the “request
to delete” the words. 
          When the court’s charge was presented to the jury, the application paragraph read,
in relevant part, as follows:
Now bearing in mind the foregoing instructions, if you find from the evidence
beyond a reasonable doubt that on or about October 8, 2004, in Lubbock
County, Texas, the defendant, GEORGE SCOTT, . . . , did then and there
possess anhydrous ammonia with intent to unlawfully manufacture a
controlled substance, to-wit: Methamphetamine, then you will find the
defendant guilty of the offense of possession of certain chemicals with intent
to manufacture a controlled substance, namely, Methamphetamine; . . . .
 
          The record does not reflect the indictment was altered. Assuming the State’s
request amounted to a motion to amend the indictment, neither such a motion by the State,
nor the trial court’s granting of the motion, constitute amendment of an indictment. Ward
v. State, 829 S.W.2d 787, 793 (Tex.Crim.App. 1992), overruled in part, Riney v. State, 28
S.W.3d 561, 566 (Tex.Crim.App. 2000) (overruling Ward to the extent it required physical
interlineation of the original indictment as the only means to accomplish an amendment). 
An amendment is effectuated either by the physical alteration of the original indictment
itself, or by the incorporation into the record of a new document to serve as the “official”
indictment. Ward, 829 S.W.2d at 793; Riney, 28 S.W.3d at 565-66. Because the
indictment in this case was never physically altered, nor was an altered indictment
substituted, there was no amendment and the original unmodified indictment remained in
full force and effect. See Ward, 829 S.W.2d at 795. 
 
 
Issues Five and Six - Charge Error
          We next turn to appellant’s issues five and six, asserting jury charge error. By his
fifth issue, appellant contends the court erred by omitting from the charge language
requiring the jury to find he intentionally and knowingly possessed anhydrous ammonia,
and by his sixth issue, argues the court’s charge impermissibly converted the offense into
a strict liability crime while shifting to him the burden to prove he lacked intent to
manufacture methamphetamine. Because of the factual interrelationship of all appellant’s
issues, we necessarily consider here some of the arguments appellant made in support
of his first two issues.
          Appellant argues section 481.124(a) requires proof that his possession of anhydrous
ammonia was accompanied by a culpable mental state. The State responds that the
culpable mental state required by the statute’s express terms is the intent to manufacture
methamphetamine. From that statutory language, it argues no additional mental state
need be shown with respect to the defendant’s possession. 
          The State further argues that a knowing mental state necessarily is encompassed
within the intent to manufacture methamphetamine because it is not possible for a
defendant to possess an ingredient of methamphetamine unknowingly yet possess it with
the intent to manufacture the controlled substance. The difficulty with this position is
section 481.124(b)(1) permits the jury to presume the defendant had the intent to
manufacture the controlled substance if it finds he possessed anhydrous ammonia in a
container not designed or manufactured for that purpose. If the State is not required to
prove that the defendant’s possession was at least reckless, a conviction under this statute
may occur without any evidence at all of a culpable mental state accompanying the
defendant’s actions.
          The absence of language in section 481.124(a) specifying a culpable mental state
as to the element of possession does not establish that the legislature intended to
dispense with a culpable mental state. See Tex. Penal Code Ann. § 6.02(b) (Vernon 2003)
(stating that if the definition of an offense does not prescribe a culpable mental state, a
culpable mental state is nevertheless required unless the definition “plainly dispenses” with
any mental element); Aguirre v. State, 22 S.W.3d 463, 470-77 (Tex.Crim.App. 1999)
(construing § 6.02(b) and setting forth factors to be reviewed in determining whether or not
a statute plainly dispenses with a mental state element). The court in Wootton v. State,
132 S.W.3d 80, 86 (Tex.App.–Houston [14th Dist.] 2004, pet. ref’d) found that the
possession of anhydrous ammonia under section 481.124(a) must be accompanied by a
culpable mental state. We agree, and find that because section 481.124(a) does not
specify a culpable mental state as to the element of possession, section 6.02(c) of the
Penal Code requires that the mental state amount to at least recklessness. Aguirre, 22
S.W.3d at 472; Wootton, 132 S.W.3d at 86.             
          Because we conclude guilt under the statute requires proof appellant’s possession
of anhydrous ammonia was accompanied by a culpable mental state, the court erred by
failing to charge the jury on possession of ammonia with the culpable mental states alleged
by the indictment; viz., intentionally and knowingly. See Dinkins v. State, 894 S.W.2d 330,
339 (Tex.Crim.App. 1995), cert. denied, 516 U.S. 832, 116 S. Ct. 106, 133 L. Ed. 2d 59
(1995) ("the charge must contain an accurate statement of the law and must set out all the
essential elements of the offense."). See also Reed v. State, 117 S.W.3d 260, 265
(Tex.Crim.App. 2003) (when not referring to lesser included offense, inclusion in charge
of recklessness as culpable mental state is error when indictment alleged only intentional
and knowing conduct). 
          Having found error in the charge, we now consider whether harm resulted. 
Because appellant did not object to the omission of intentionally and knowingly from the
application paragraph of the charge, we reverse the judgment only if the error caused
appellant such “egregious harm” that it deprived him of a fair and impartial trial. Martin v.
State, 200 S.W.3d 635, 639-40 (Tex.Crim.App. 2006); Hutch v. State, 922 S.W.2d 166,
171 (Tex.Crim.App. 1996); Almanza v. State, 686 S.W.2d 157, 171 (Tex.Crim.App. 1985)
(op. on reh’g). "Jury-charge error is egregiously harmful if it affects the very basis of the
case, deprives the defendant of a valuable right, or vitally affects a defensive theory." 
Stuhler v. State, 218 S.W.3d 706, 719 (Tex.Crim.App. 2007). The record must show the
defendant suffered actual, rather than merely theoretical, harm from the jury instruction
error. Almanza, 686 S.W.2d at 174. Our review for egregious harm requires consideration
of the entire charge, the evidence including the contested issues and weight of the
probative evidence, the arguments of counsel, and any other relevant information revealed
by the record of the trial as a whole. Stuhler, 218 S.W.3d at 719. Evaluation of those
factors convinces us that the defects in the charge did not cause appellant egregious harm.
          We begin with the charge. In addition to the application paragraph, our review of
the entire charge must include consideration of the definitions. Here, the charge contained
the following:
By the term ‘possession’ is meant the actual care, custody, control or
management. Possession is a voluntary act if the possessor knowingly
obtains or receives the thing possessed or is aware of his control of the thing
for a sufficient time to permit him to terminate his control.
 
A person commits an offense only if he voluntarily engages in conduct,
including an act, an omission, or possession.
 
The charge’s definition of possession is taken from section 481 of the Health and Safety
Code.


 The remaining language we have quoted is taken from section 6.01(a) and (b) of
the Penal Code. Subsection (a) codifies the common law rule that a voluntary act or
omission is a predicate to criminal responsibility. See Seth S. Searcy III & James R.
Patterson, Vernon’s Annotated Penal Code, § 6.01, Practice Commentary, p. 80 (West
1974). The provisions of section 6.01 focus on the actus reus requirement for criminal
responsibility, while the mental state requirement is addressed in section 6.02. Rogers v.
State, 105 S.W.3d 630, 637 (Tex.Crim.App. 2003).
          Had the court’s charge contained the “intentional and knowing” mental state
requirement as to appellant’s possession of the anhydrous ammonia, it would have
contained the definition of knowing action from Penal Code section 6.03(b), which reads: 
“A person acts knowingly, or with knowledge, with respect to the nature of his conduct or
to circumstances surrounding his conduct when he is aware of the nature of his conduct
or that the circumstances exist.” Tex. Penal Code Ann. § 6.03(b) (Vernon 2003).  
          Under the charge as given, to find that appellant’s possession of the ammonia was
a voluntary act, the jury must have found he at least was “aware of his control” of it. The
charge thus placed before the jury the requirement that the State prove appellant had an
awareness of the ammonia in the vehicle. That the wording came from section 6.01(b)
rather than section 6.03(b) does not show egregious harm to appellant. 
          The contested issues at trial and the arguments of counsel concerning those issues
further support our conclusion that appellant did not suffer egregious harm from the court’s
charge error. After concluding that the possession of anhydrous ammonia must be
accompanied by a culpable mental state to violate section 481.124, the court in Wootton
found case law construing the definition of possession in the context of knowing or
intentional possession of a controlled substance to be “instructive” in its analysis of the
issue before it. 132 S.W.3d at 86. As the court there noted, to establish the unlawful
possession of a controlled substance, the State must show that the defendant (1)
exercised actual care, control or custody over the substance, and (2) was conscious of his
connection with it and knew what it was. Id., citing Brown v. State, 911 S.W.2d 744, 747
(Tex.Crim.App. 1995).


 When, like here, a defendant is not in sole control of the place
where contraband is found, his knowing possession of the contraband typically is evaluated
through a links analysis, by which the State must demonstrate that the defendant’s
connection with the contraband was not merely fortuitous. Wootton, 132 S.W.3d at 86; see
Evans v. State, 202 S.W.3d 158, 161 (Tex.Crim.App. 2006) (applying analysis). We will
discuss the evidence in more detail under our analysis of appellant’s third and fourth
issues, but for present purposes we note simply that the case was tried like a controlled
substance possession case. The State emphasized the evidence showing appellant’s
connection with the pickup, the ammonia odor that was present, the location of the tank
behind the passenger side of the pickup, and his tools in the pickup to link appellant with
the ammonia. The defense attempted to discount the same factors. 
          During voir dire, the State and appellant discussed the State’s burden to prove, inter
alia, appellant intentionally and knowingly possessed anhydrous ammonia. The prosecutor
explained for the veniremen the State must prove appellant intentionally and knowingly
possessed anhydrous ammonia. Panel members expressed understanding of the terms
in conjunction with the State’s burden of proof. 
          The indictment, read in open court before the jury, averred appellant “intentionally
and knowingly” possessed the anhydrous ammonia.   
          The arguments of counsel also emphasized the State’s burden to show appellant
was aware of the presence of the ammonia. When reviewing the charge with the jury
during final argument, the prosecutor told them that the definition of possession was “the
most important thing for you to deliberate on.” When discussing extraneous offenses she
told the jury it could consider such evidence in “determining whether or not this [d]efendant
had knowledge, had the intent, preparation, plan knowledge [sic] to possess the anhydrous
ammonia.” She returned to the issue of possession later in her argument and read the
definition and the “voluntary act” language from the charge. From that and other instances,
the State’s argument made clear that the jury must find appellant was aware the ammonia
was present to convict him as the possessor. 
          Appellant’s counsel also walked the jury through the definition of possession in the
charge and agreed with the prosecutor that possession “is the crucial part of this trial.” He
proceeded to read the definition of possession and emphasized the requirement of
voluntary possession. Counsel argued further, “What does this boil down to? I think y’all
have kind of picked up on this, I’m sure you have. Knowledge. Knowledge is what we’re
talking about. The State is trying to show you that Mr. Scott had knowledge of what was
in that pickup.” After attacking each of the links argued by the State, he concluded by
emphasizing the knowledge required for voluntary possession. The State’s closing
argument contains nothing suggesting that the jury could convict appellant without finding
he was aware the ammonia was in the truck.
          Having considered the entire charge, the evidence presented and the arguments
of counsel, we conclude appellant has not shown the omission of the intentional or
knowing mental state modifying possession in the court’s charge caused him such
egregious harm as to deny him a fair and impartial trial. Appellant’s fifth issue is overruled.
          By his sixth issue, appellant raises an additional claim of charge error. Here he
contends the presumption of intent to manufacture created by section 481.124(b)
improperly shifted the burden to him to disprove intent. We disagree.
          As explained above, because appellant made no objection to the charge, if we find
error our review is limited to whether the error produced egregious harm for appellant. 
          The jury was instructed from section 481.124(b) of events that if found beyond a
reasonable doubt raise a presumption of intent to unlawfully manufacture
methamphetamine. One event the charge listed was possession of anhydrous ammonia
in an unauthorized container. In the same numbered section of the charge the court added
the instruction of Penal Code section 2.05(a)(2). Tex. Pen. Code Ann. § 2.05(a)(2)
(Vernon 2003). The section 2.05 instruction converted the mandatory presumption of
section 481.124(b) into a permissive presumption. See Willis v. State, 790 S.W.2d 307,
310 (Tex.Crim.App. 1990) (permissive presumption allows but does not require jury to infer
fact from predicate fact). Permissive presumptions do not lessen the State's burden of
proof. Id. A permissive presumption places no burden on the accused to disprove the
presumed fact. Id. 
          To convict appellant, the jury had to find appellant intended to unlawfully
manufacture methamphetamine. If it credited the predicate evidence of possession so that
it could rightly presume intent to manufacture, it was only after hearing evidence and
argument that appellant knowingly possessed anhydrous ammonia in an unauthorized
container.
          We find the court did not err in charging the jury on the presumption of intent to
manufacture arising from possession in an unauthorized container. The burden of proof
of intent to manufacture was not shifted to appellant. We overrule appellant’s sixth issue.
Issues Three and Four - Sufficiency of Evidence 
            In reviewing the legal sufficiency of the evidence to support a conviction, we view
all the evidence in the light most favorable to the verdict in order to determine whether any
rational trier of fact could have found the essential elements of the crime beyond a
reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed.
2d 560 (1979); Hampton v. State, 165 S.W.3d 691, 693 (Tex.Crim.App. 2005). The
standard is the same whether applied to direct or circumstantial evidence. Hooper v. State,
214 S.W.3d 9, 13 (Tex.Crim.App. 2007). The standard fully recognizes the responsibility
of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw
reasonable inferences from basic facts to ultimate facts. Jackson, 443 U.S. at 319. The
trier of fact is the sole judge of the weight and credibility of the evidence. See Tex. Code
Crim. Proc. Ann. art. 38.04 (Vernon 1979). This means when performing a legal
sufficiency review we may not re-evaluate the weight and credibility of the evidence and
substitute our judgment for that of the trier of fact. Dewberry v. State, 4 S.W.3d 735, 740
(Tex.Crim.App. 1999), cert. denied, 529 U.S. 1131, 120 S. Ct. 2008, 146 L. Ed. 2d 958
(2000). We resolve any inconsistencies in the evidence in favor of the verdict. Curry v.
State, 30 S.W.3d 394, 406 (Tex.Crim.App. 2000). The sufficiency of the evidence should
be measured by the elements of the offense as defined by the hypothetically correct jury
charge for the case. Malik v. State, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997); Barnum
v. State, 7 S.W.3d 782, 787-88 (Tex.App.–Amarillo 1999, pet.ref’d). To prove by factual
links an accused’s care, custody, or control of contraband it is not the number of links that
is dispositive, but rather the logical force of all of the evidence, direct and circumstantial. 
Evans v. State, 202 S.W.3d 158, 162 (Tex.Crim.App. 2006).
          Evidence supporting guilt, though legally sufficient, may be factually insufficient
because it is so weak that the jury’s verdict seems clearly wrong and manifestly unjust, or 
because evidence contrary to the verdict is such that the jury’s verdict is against the great
weight and preponderance of the evidence. Marshall v. State, 210 S.W.3d 618, 625
(Tex.Crim.App. 2006); Watson v. State, 204 S.W.3d 404, 414-15 (Tex.Crim.App. 2006);
Johnson v. State, 23 S.W.3d 1, 11 (Tex.Crim.App. 2000). In a factual sufficiency review,
we consider all the evidence, in a neutral light. Marshall, 210 S.W.3d at 625; Watson, 204
S.W.3d at 414. Although an appellate court’s authority to review factual sufficiency permits
the court to disagree with the fact finder’s determinations, the appellate court must accord
them due deference, particularly those determinations concerning the weight and credibility
of the evidence. Johnson, 23 S.W.3d at 9. When there is a conflict in the evidence, we
may not find the evidence factually insufficient simply because we disagree with the jury’s
resolution of the conflict. Rather, we must first be able to say, with some objective basis
in the record, that the great weight and preponderance of all the evidence contradicts the
jury’s verdict. Watson, 204 S.W.3d at 417. We must also discuss the evidence that,
according to the appellant, most undermines the jury's verdict. Sims v. State, 99 S.W.3d
600, 603 (Tex.Crim.App. 2003). 
          Turning first to the question of intentional and knowing possession of anhydrous
ammonia, we note appellant was the lone passenger of the pickup driven by Berryhill. 
Trooper Johnson testified that in response to his inquiry of their origin and destination,
appellant said he and Berryhill had just “picked up” the vehicle. Berryhill gave Johnson
permission to search the vehicle. According to Johnson, appellant appeared worried on
learning of Berryhill’s consent to search. Johnson opined that appellant’s countenance
conveyed “a look that the knew he was in trouble.” While searching the passenger side
of the vehicle Johnson encountered an odor that he “recognized...right of[f] the bat to be
ammonia.” In the toolbox of the pickup, Johnson discovered an unauthorized container
that according to a subsequent test contained anhydrous ammonia. The toolbox was
located directly behind appellant in the bed of the vehicle. 
          The jury could have believed appellant possessed a measure of control of the
vehicle at the time of the stop by Johnson. Specifically, Jimmy Lee Hale testified he owned
the pickup and, from jail, gave instructions for appellant to sell the vehicle for him and place
the proceeds in his inmate trust account. According to Hale, from time to time appellant
borrowed the truck for use in his roofing business. Johnson testified some items in the bed
of the truck at the time of the stop, including a toolbox, tools, cooler and wheelbarrow,
belonged to appellant and his father. There was also evidence at trial that the DPS
previously stopped appellant for a traffic violation while he was driving the pickup. 
          We find that the logical force of all the evidence sufficiently linked appellant to the
propane tank in the vehicle. Accordingly, we conclude that the evidence appellant
intentionally and knowingly possessed the anhydrous ammonia Trooper Johnson found
in the pickup was legally and factually sufficient. We overrule issues three and four as they
pertain to the issue of possession of anhydrous ammonia.
          Appellant further challenges the sufficiency of the State’s proof that the tank in
question contained anhydrous ammonia. The State relies on a statutory presumption to
establish this element. Applicable to this case, section 481.124 provides that a substance
in a container or receptacle not designed and manufactured to lawfully hold or transport
anhydrous ammonia is “presumed” to be anhydrous ammonia if a properly administered
field test of the substance using a testing device or instrument designed and manufactured
for that purpose produces a positive result for anhydrous ammonia. 
          DPS narcotics officer Tommy Salmon testified that a propane tank is not an
approved container for anhydrous ammonia. At the stop location, Salmon tested the
contents of the propane tank in question with a Drager pump system, which, according to
his testimony, is a test for determining the presence of ammonia. Salmon testified in his
opinion the tank contained ammonia. DPS chemist Scott Williams rendered the opinion
at trial that the tank in question contained anhydrous ammonia. There was no contrary
evidence. Therefore, the jury was allowed to “presume” that the tank contained anhydrous
ammonia. We overrule issues three and four as they pertain to the issue of the presence
of anhydrous ammonia.
          The final element of the State’s case challenged by appellant was proof of intent to
manufacture methamphetamine. Trooper Salmon testified without objection that, based
on his training and experience as a narcotics officer, anhydrous ammonia has two uses:
as a fertilizer in farming and to manufacture methamphetamine. Earlier in trial, Trooper
Johnson rendered the same opinion. DPS chemist Scott Williams explained anhydrous
ammonia is lawfully used as fertilizer and unlawfully used in the manufacture of
methamphetamine. Under section 481.124 an intent to unlawfully manufacture the
controlled substance methamphetamine is presumed if the actor possesses or transports
anhydrous ammonia in a container or receptacle that is not designed and manufactured
to lawfully hold or transport anhydrous ammonia. See section 481.124(b)(1). 
          According to Salmon and Williams, those using anhydrous ammonia for agriculture
must keep the substance in an approved container, and a propane tank is not an approved
container. As to these facts there was not contrary evidence. Therefore, the jury was free
to “presume” appellant possessed the intent to manufacture methamphetamine, provided
they found the container or receptacle in his possession actually contained anhydrous
ammonia. See section 481.124(b)(1). Issues three and four are overruled as to the
element of “intent to manufacture” methamphetamine.
          In his factual sufficiency challenge, appellant assails the strength of evidence linking
him to the ammonia by urging the implausibility of the tank leaking at the time of the stop. 
Otherwise, argues appellant, Johnson would have smelled the ammonia at the inception
of the stop. To follow this logic means, and as appellant claims, the tank suddenly began
leaking during the stop. Johnson’s testimony was not presented according to a time line. 
Neither side presented evidence of the lapse between the inception of the stop and the
moment Johnson initially smelled ammonia. Johnson did testify he “immediately” took
Berryhill to the rear of his patrol car and smelled ammonia when he began searching the
passenger side of the pickup. Moreover, appellant’s link to the ammonia was shown by
the evidence of possession which is detailed above. 
          Having considered all the evidence in a neutral light, we find the jury was rationally
justified in finding beyond a reasonable doubt that appellant intentionally and knowingly
possessed anhydrous ammonia with intent to manufacture the controlled substance,
methamphetamine. Likewise, we do not find the jury’s verdict so against the great weight
and preponderance of the evidence to be clearly wrong and manifestly unjust. We overrule
appellant’s third and fourth issues.
Conclusion
          Having overruled each of appellant’s issues, we affirm the judgment of the trial
court.
          
                                                                        James T. Campbell

                                                                        Justice



Publish. 



Quinn, C.J., concurring.

Pirtle, J., dissenting.