

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 2-09-273-CR**

DANIEL EUGENE EDWARDS, JR.                                        APPELLANT

V.

THE STATE OF TEXAS                                                      STATE

------------

FROM THE 30TH DISTRICT COURT OF WICHITA COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

A jury found Appellant Daniel Eugene Edwards, Jr. guilty of possessing or transporting anhydrous ammonia with the intent to manufacture a controlled substance. The trial court assessed Edwards's punishment and sentenced him to fifteen years' confinement. In two issues, Edwards claims that the evidence is legally

---

[1] *See* Tex. R. App. P. 47.4.

and factually insufficient to establish that he possessed or transported anhydrous ammonia.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Wichita Falls police officer Sergeant James Jackson and his canine partner, Ward, were dispatched to respond to a theft or a burglary that had occurred at a known "narcotics house." Dispatch referenced a suspect wearing black clothing and carrying a duffel bag and indicated that a red pickup truck with a damaged front end had just departed the location.

While en route to the location, less than ten minutes after receiving the dispatch, Sergeant Jackson spotted a red pickup matching the description provided by dispatch. Sergeant Jackson stopped the pickup. Three individuals were in the pickup. Edwards was driving, Russell Beggs occupied the passenger seat, and Rhonda Thelen sat in the middle. Sergeant Jackson asked the pickup's occupants to exit the pickup.

Ward alerted near the open driver's side window, and Sergeant Jackson searched the pickup.[2] He found a coffee grinder and a can of rust remover under the driver's seat. The coffee grinder contained a white powdery residue with small red flakes in it. Inside a duffel bag on the front passenger side floorboard, Sergeant Jackson found a metal tank wrapped in plastic. The tank's valve was corroded and blueish-green. The tank was designed to hold compressed air, not anhydrous

---

[2] Ward alerts only to narcotics, not to anhydrous ammonia.

ammonia. In the center console, inside a lidded drink cup, Sergeant Jackson found a plastic baggie containing powder. In the bed of the pickup, Sergeant Jackson found a can of Coleman camp fuel, a plastic water jug, and a small gas can.

Sergeant Jackson testified that he did not smell ammonia when he approached the pickup and that Beggs—not Edwards—matched the description of the suspect seen departing the burglary location with a duffel bag. Sergeant Jackson agreed that manufacturing methamphetamine could be carried out by one person. Officer Karl King, who assisted Sergeant Jackson at the scene, testified that he took a sample of the liquid in the tank. He said that he had never encountered a "meth lab" run by a single person. Officer Gerald Schulte, who was also at the scene of Edwards's arrest, testified that the tank's corroded, blueish-green valve indicated that it contained anhydrous ammonia. Officer Schulte said that the tank was not designed to hold ammonia and that the manufacture of methamphetamine was commonly performed by multiple individuals. Officer Joseph Anderson, who was certified as a methamphetamine lab investigator, testified that the blue color of the tank's valve indicated that it contained anhydrous ammonia and that the tank was not designed to hold anhydrous ammonia. Officer Anderson testified that the coffee grinder, the can of rust remover, the plastic bucket, the Coleman fuel, the gas can, and the plastic bottle were all items commonly used in the manufacture of methamphetamine.

3

Testing revealed no fingerprints on the coffee grinder or can of rust remover. The tank was not tested for fingerprints because police policy forbids the fingerprint examination of items suspected of containing anhydrous ammonia due to the danger involved. The sample from the tank taken by Officer King tested positive for ammonia.

A jury heard the above evidence. The trial court charged the jury on the law of parties, and the jury returned a verdict of guilty. Edwards perfected this appeal.

## III. STANDARDS OF REVIEW

### A. Legal Sufficiency

In reviewing the legal sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778. The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon

4

1979); *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 2075 (2009). Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1131 (2000). Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). We must presume that the factfinder resolved any conflicting inferences in favor of the prosecution and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778.

## B. Factual Sufficiency

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Steadman v. State*, 280 S.W.3d 242, 246 (Tex. Crim. App. 2009); *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the factfinder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the factfinder's determination is manifestly unjust. *Steadman*, 280 S.W.3d at 246; *Watson*, 204 S.W.3d at 414–15, 417. To reverse under the second ground, we must determine,

5

with some objective basis in the record, that the great weight and preponderance of all the evidence, although legally sufficient, contradicts the verdict. *Watson*, 204 S.W.3d at 417.

Unless we conclude that it is necessary to correct manifest injustice, we must give due deference to the factfinder's determinations, "particularly those determinations concerning the weight and credibility of the evidence." *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000); *see Steadman*, 280 S.W.3d at 246. Evidence is always factually sufficient when it preponderates in favor of the conviction. *Steadman*, 280 S.W.3d at 247; *see Watson*, 204 S.W.3d at 417.

In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by legally sufficient evidence, it is not enough that this court "harbor a subjective level of reasonable doubt to overturn [the] conviction." *Watson*, 204 S.W.3d at 417. We cannot conclude that a conviction is clearly wrong or manifestly unjust simply because we would have decided differently than the jury or because we disagree with the jury's resolution of a conflict in the evidence. *Id*. We may not simply substitute our judgment for the factfinder's. *Johnson*, 23 S.W.3d at 12; *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). Unless the record clearly reveals that a different result is appropriate, we must defer to the jury's determination of the weight to be given contradictory testimonial evidence because resolution of the conflict "often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony

6

was delivered." *Johnson*, 23 S.W.3d at 8. Our deference in this regard safeguards the defendant's right to a trial by jury. *Lancon v. State*, 253 S.W.3d 699, 704 (Tex. Crim. App. 2008). An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant's complaint on appeal. *Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

## IV. THE EVIDENCE IS SUFFICIENT

### A. The Elements of the Offense; The Law of Possession

The elements of the offense of possessing or transporting anhydrous ammonia with the intent to manufacture a controlled substance are that (1) the defendant (2) with the intent to unlawfully manufacture a controlled substance (methamphetamine) (3) intentionally or knowingly possessed or transported (4) anhydrous ammonia. *See* Tex. Health & Safety Code § 481.124(a)(1) (Vernon Supp. 2009). "Possession" means actual care, custody, control, or management. *Id*. § 481.002(38). Circumstantial evidence may be used to prove the elements of the offense, including the culpable mental state. *McGoldrick v. State*, 682 S.W.2d 573, 578 (Tex. Crim. App. 1985). Edwards specifically challenges the sufficiency of the evidence to show that he intentionally or knowingly possessed or transported the anhydrous ammonia. When the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that he had knowledge of and control over the contraband unless there are additional independent facts and circumstances that link him to the contraband. *Poindexter v. State*, 153 S.W.3d 402,

7

405–06 (Tex. Crim. App. 2005). Evidence that links an accused to the substance suffices for proof that he possessed it knowingly. *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995). An accused's links to contraband may be shown by direct or circumstantial evidence, but in either event the evidence must establish, to the requisite level of confidence, that the accused's connection with the drug was more than just fortuitous. *Poindexter*, 153 S.W.3d at 405–06.

Mere presence at the location where the contraband is found is thus insufficient, by itself, to establish actual care, custody, or control of the contraband. *Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006). However, presence or proximity, when combined with other links, may well be sufficient to establish that element beyond a reasonable doubt. *Id.* It is not the number of links that is dispositive but, rather, the logical force of all of the evidence. *Id.* Factors that may circumstantially establish legally sufficient evidence of "knowing" possession include:

> (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.

*Id.* at 162 n.12.  The absence of various of these listed links does not constitute evidence of innocence to be weighed against the links that do exist.  *Hernandez v. State*, 538 S.W.2d 127, 131 (Tex. Crim. App. 1976).  Moreover, it is not the number of links that is dispositive, but rather the logical force of all of the evidence, direct and circumstantial.  *Evans*, 202 S.W.3d at 162.

## B.  Legal Sufficiency of the Evidence

Here, Edwards was driving the car in which the ammonia and related items were found.  At least some of the items were in plain view in the bed of the pickup.  The coffee grinder was under Edwards's seat and contained a powder residue with red flakes in it, which Officer Anderson testified was ground-up pseudoephedrine, a key component in the manufacture of methamphetamine.  More of what appeared to be the same substance was found in a baggie inside a lidded cup in a cupholder in the center console, which was within Edwards's reach.  Additionally, the rust remover was under the driver's side seat in which Edwards was sitting.  The rust remover can stated that it contained hydrochloric acid, which Officer Anderson testified is used in manufacturing methamphetamine.

Viewing the evidence in the light most favorable to the verdict, we conclude that these facts, in combination, provide sufficient logical force to establish that Edwards exercised control over the tank of anhydrous ammonia found in the passenger-side floorboard of the pickup and that his relationship to it was more than fortuitous.  *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d

9

at 778; *Robinson v. State*, 174 S.W.3d 320, 326 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (affirming possession conviction of front-seat passenger in truck where cocaine was located in factory compartment in back wall of truck, and noting that cocaine was within vicinity and easily accessible to passenger).  We overrule Edwards's first issue.

## C.  Factual Sufficiency of the Evidence

Edwards claims that the evidence is factually insufficient to show that he possessed the tank of anhydrous ammonia because Beggs was observed leaving the burglary scene with the duffle bag containing the tank of anhydrous ammonia and the duffle bag was found at Beggs's feet on the floorboard in front of the passenger seat.  But the jury was charged on the law of parties and the fact that Beggs was in the pickup and that the tank of anhydrous ammonia was located at Beggs's feet does not render the links discussed above factually insufficient to prove that Edwards (1) exercised control over the substance by transporting it in his pickup and (2) knew, based on the other items and substances in the pickup, that the tank contained anhydrous ammonia.  *See Evans*, 202 S.W.3d at 166 (concluding that "the circumstantial evidence, when viewed in combination and its sum total, constituted amply sufficient evidence connecting appellant to the actual care, custody, control, or management of the cocaine in front of him"); *Poindexter*, 153 S.W.3d at 412 (explaining that "[t]he mere fact that a person other than the accused might have joint possession of the premises does not require the State to prove that the

10

defendant had *sole* possession of the contraband, only that there are affirmative links between the defendant and the drugs such that he, too, knew of the drugs and constructively possessed them").

Viewing the evidence neutrally, we recognize that Edwards was not under the influence of the narcotics, did not possess other contraband on his person, did not make any incriminating statements, and did not attempt to flee. Sergeant Jackson testified that he did not notice the smell of anhydrous ammonia when he approached the pickup but that the tank was wrapped in plastic and placed inside a duffle bag. Edwards also was not in possession of a large amount of cash. Possible links that do not exist, however, do not negate the links that are present. *Evans*, 202 S.W.3d at 164 (rejecting court of appeals' determination of legal insufficiency that was based in part on recitation of links that "did not exist in this case"). Edwards was driving the pickup and had allowed Beggs to enter the pickup with the duffle bag, and the pickup contained many other items used in the manufacture of methamphetamine, as set forth in detail above. *See Wootton v. State*, 132 S.W.3d 80, 89–90 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) (holding factually sufficient evidence existed that appellant knew tanks contained anhydrous ammonia when appellant's truck, where the tanks were found, also contained many other ingredients used to manufacture methamphetamine).

In light of the evidence supporting the jury's verdict, we conclude that the evidence is not so obviously weak that the verdict is clearly wrong and manifestly

11

unjust or that the proof of guilt is against the great weight and preponderance of the evidence.  *See Steadman*, 280 S.W.3d at 246; *Watson*, 204 S.W.3d at 414–15, 417. Accordingly, we hold that the evidence is factually sufficient to support Edwards's conviction.  We overrule Edwards's second issue.

## V. CONCLUSION

Having overruled both of Edwards's issues, we affirm the trial court's judgment.

> SUE WALKER
> JUSTICE

PANEL: DAUPHINOT, GARDNER, and WALKER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: May 20, 2010

12